J-A23007-17

2017 PA Super 387

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL SANTOS, | : | |
| | : | |
| Appellee | : | No. 22 EDA 2015 |

Appeal from the Order Entered December 15, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0002209-2014

BEFORE: PANELLA, J., DUBOW, J., and FITZGERALD, J.*

OPINION BY DUBOW, J.: **FILED DECEMBER 11, 2017**

The Commonwealth appeals from the December 15, 2014 Order entered by the Philadelphia County Court of Common Pleas prohibiting the Commonwealth from calling a police officer at trial to remedy the Commonwealth's purported discovery violation. After careful review, we reverse.

Between June 17, 2013, and July 2, 2013, Philadelphia narcotics police officers conducted surveillance at 3205 and 3207 Rorer Street. On June 17, 2013, Philadelphia Police Officer Stephen Dmytryk observed Appellee enter and exit 3205 and 3207 Rorer Street,[1] and sell 43 packets of crack cocaine to a confidential informant ("CI") using pre-recorded buy money.

---

[1] Officer Dmytryk testified that 3207 Rorer Street was an abandoned house that had a board and padlock out front that required a key to enter.

---

* Former Justice specially assigned to the Superior Court.

On July 1, 2013, Officer Dmytryk, assisted by Officers Kapusniak and Kuhn, conducted a second controlled buy using a CI. As Officer Kapusnick looked on, Officer Dmytryk searched the CI before and after the transaction. The officers observed the CI hand pre-recorded buy money to Appellee, who then entered 3205 Rorer Street, exited shortly thereafter, and handed 38 packets of crack cocaine to the CI.

On July 2, 2013, Officer Dmytryk, assisted by Officer Kapusniak, returned to the area and observed Appellee enter and exit 3205 Rorer Street. Officer Dmytryk observed Appellee bend down near a parked green Ford Explorer, and then conduct four drug sales.

Later that afternoon, Officer Dmytryk called for backup officers to arrest Appellee and assist in executing a search warrant. Officer Hagins arrested Appellee and recovered $49. Officer Hagins recovered one pill bottle with seven packets of heroin and one pill bottle with 13 packets of crack cocaine from the back seat of the green Ford Explorer.

From 3205 Rorer Street, police recovered $303, Appellee's Pennsylvania ID card, new and unused clear ziplock packets, and a set of keys that opened both 3205 and 3207 Rorer Street. From 3207 Rorer Street, police recovered 278 packets of marijuana, and 308 packets of heroin that matched the packets of drugs recovered from the green Ford Explorer.

The Commonwealth charged Appellee with Possession of a Controlled Substance With Intent to Deliver ("PWID"), Criminal Conspiracy, and

Possession of a Controlled Substance.[2]   On February 27, 2014, Officer

Dmytryk testified to the above facts as the Commonwealth's only witness at

Appellee's preliminary hearing, and the court held Appellee for trial on all

charges.

Appellee requested a jury trial, which the trial court scheduled for

November 8, 2014.  On August 7, 2014, Appellee filed a Motion for Discovery[3]

seeking information related to a federal indictment, unsealed in July 2014,

charging six Philadelphia police officers with numerous federal crimes,

including violation of the Racketeer Influence and Corrupt Organizations Act.

***United States v. Thomas Liciardello, Brian Reynolds, Michael Spicer,***

***Perry Betts, Linwood Norman, John Speiser***, No.  2:14-cr-00412-ER

(E.D.Pa. filed July 29, 2014).  Significantly, Officer Dmytryk was not one of

the six indicted officers, and none of the six indicted officers played any role

in Appellee's case.  Paragraph 87 in the indictment alleged that a Philadelphia

police officer, referred to only as "S.D.," had falsified a police report in an

unrelated criminal case against Kenneth Mills in 2011.[4]  Appellee, believing

---

[2] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 903; and 35 P.S. § 780-113(a)(16), respectively.

[3] Appellee had filed an Omnibus Pre-Trial Motion on April 15, 2014.

[4] On August 6, 2014, Appellee also sent a letter to the Philadelphia District Attorney's Office's East Bureau Chief requesting discovery related to Officer Dmytryk.

"S.D." referred to Officer Dmytryk, requested any information or documents related to investigations of Officer Dmytryk in the possession of the Philadelphia District Attorney's Office or the Philadelphia Police Department ("PPD"). Appellee also sought any documents related to the state case against Kenneth Mills in 2011, and any other **Brady**[5] material. Appellee essentially sought to obtain any information substantiating Paragraph 87 in order to support a similar argument in his case, *i.e.*, that Officer Dmytryk also falsified paperwork related to the instant PWID case against Appellee.

On August 12, 2014,[6] Appellee served a subpoena *duces tecum* on the PPD seeking any relevant documents related to Officer Dmytryk, including, *inter alia*, internal affairs investigations of Officer Dmytryk, any files related to an alleged joint FBI/PPD task force, any documents related to the case against Kenneth Mills in 2011, and any **Brady** material. On August 14, 2014, the City of Philadelphia filed a Motion to Quash Appellee's subpoena.

On August 22, 2014, the trial court conducted a hearing, and an Assistant City Solicitor for the City of Philadelphia appeared on behalf of the

---

[5] **See Brady v. Maryland**, 373 U.S. 83 (1963) (finding it is a violation of a defendant's right to due process to withhold evidence that is favorable to the defense and material to the defendant's guilt or punishment).

[6] In its Pa.R.A.P. 1925(a) Opinion, the trial court referenced an August 11, 2014 discovery hearing at which the parties purportedly discussed Appellee's discovery Motion off the record. We note that the certified record does not include a transcript of this hearing or discussion.

PPD to address Appellee's subpoena. Regarding internal investigations against Officer Dmytryk, the City agreed to comply and turn over information regarding three investigations of prior complaints against Officer Dmytryk.[7] Regarding the case against Kenneth Mills in 2011, the City agreed to comply and turn over any information in its possession regarding that case.

At this hearing, the scope of the dispute over the subpoena narrowed to Appellee's request for information to substantiate Paragraph 87 in the indictment alleging that Philadelphia Police Officer "S.D." had falsified a police report in an unrelated criminal case against Kenneth Mills in 2011. Citing press releases and the grand jury's indictment, Appellee argued that the PPD must have a separate file as a result of its work with the FBI in a joint task force investigating the six indicted police officers.

The City responded that it did not have any information that Appellee alleged had substantiated Paragraph 87 in the federal indictment. The City explained that any Philadelphia police officers involved had been deputized by the FBI as part of the purported joint task force, and the FBI had "controlling authority" over the investigation and its files. Essentially, the City claimed that Appellee should have subpoenaed the FBI. The trial court held this

---

[7] The trial court concluded that a fourth investigation was not relevant and did not require the City to turn over those documents.

portion of the City's Motion to Quash under advisement.[8]  Appellee requested a continuance in order to subpoena a PPD sergeant assigned to the purported joint FBI/PPD task force.

On September 4, 2014, Appellee filed a Motion to Compel Discovery, and the trial court held a hearing on September 12, 2014, at which Philadelphia Police Sergeant Gerard Deacon testified.[9]  Sergeant Deacon, assigned to the "FBI Corruption Task Force," testified that he was deputized by the FBI as a federal agent, but the PPD paid his salary.  Sergeant Deacon testified that the PPD does not keep their own file regarding the FBI Corruption Task Force, explaining that "[e]verything stays on the federal side.  I report to the [PPD] the investigation when there's an indictment coming down, of course.  But as far as any paperwork that has to do with [a] federal investigation, none of that gets handed over to the [PPD]."  N.T., 9/12/14, at 17.  In response to the trial court's question, Sergeant Deacon clarified that that the PPD had not received any documentation or memos regarding an investigation into Paragraph 87 in the federal indictment referencing "S.D." *Id.* at 19.

---

[8] The trial court remarked that "the City Solicitor's hands are tied.  He can't obtain documents that he didn't update or he doesn't have the authority to produce.  I think you have to go through the federal agent."  N.T., 8/22/14, at 24.

[9] Officer Dmytryk also testified briefly that he was assigned to the Narcotics Field Unit and continued to work and make arrests.

As part of his duties on the FBI Corruption Task Force, Sergeant Deacon testified that he had knowledge of corroborating information to substantiate the single paragraph in the federal indictment referencing "S.D." However, Sergeant Deacon could not reveal this information "under federal grand jury rules." N.T., 9/12/14, at 14.[10] The trial court appeared to credit Sergeant Deacon's testimony, stating that "I take him on his word." *Id.* at 30. Nevertheless, the trial court ordered the City to request the FBI file and "to do their due diligence to see if there's any memos or other type of paperwork that's been passed [to the PPD]." *Id.*

On October 1, 2014, in response to the City's request, the U.S. Attorney's Office stated in a letter that the police report previously passed to Appellee contained "the names of all witnesses known to the government concerning that search. Any additional items, including notes of testimony and/or documents concerning that search, are not subject to disclosure under grand jury secrecy rules. See Federal Rule of Criminal Procedure 6(e)(2)." Letter from U.S. Attorney Zane Memeger and Assistant U.S. Attorney Anthony J. Wzorek, dated October 1, 2014.

---

[10] Federal Rule of Criminal Procedure 6 governs the Federal Grand Jury process and secrecy rules. Rule 6(e)(2)(B) defines individuals "who must not disclose a matter occurring before the grand jury[,]" including "an attorney for the government[,]'" with certain exceptions for disclosure provided in Rule 6(e)(3). *See also* 18 U.S.C. § 3322 (entitled "Disclosure of certain matters occurring before grand jury"). "A knowing violation of Rule 6 . . . may be punished as a contempt of court." Fed.R.Crim.P. 6(e)(7).

On October 9, 2014, the trial court held another discovery hearing. The City submitted the October 1, 2014 letter from the U.S. Attorney, as well as a copy of an October 7, 2014 letter the U.S. Attorney had sent to Officer Dmytryk's attorney stating that Officer Dmytryk was not the subject of any investigation with respect to the arrest cited in Paragraph 87 of the federal indictment. The Commonwealth asserted that it had complied with its obligations under the discovery rules and ***Brady*** and it had turned over all documents under its control. The Commonwealth also argued that counsel had not reached out to any of the witnesses mentioned in the October 1, 2014 letter. The Commonwealth further argued that Appellee had presented no evidence that the purported documents or information actually contained ***Brady*** material. The trial court continued the hearing to provide Appellee the opportunity to contact and interview each of the witnesses who the U.S. Attorney had mentioned in his October 1, 2014 letter.

On November 14, 2014, the trial court held another discovery hearing. Appellee reported that he had reached out to all witnesses in the police paperwork mentioned in the October 1, 2014 letter, but was unable to interview any of them. With respect to the custody of the allegedly undisclosed materials, the trial court acknowledged that the PPD "does not have any documents," and orally sanctioned the Commonwealth for its failure to obtain the documents from the FBI. The court then ordered as a discovery

sanction that Officer Dmytryk would be precluded from testifying as a witness in Appellee's trial.  N.T., 11/14/14, at 6.

The trial court did not enter a formal written Order, and the docket entries do not reflect the trial court's oral Order.  On December 15, 2014, the trial court conducted a status hearing to remedy this oversight and issued a formal Order precluding Officer Dmytryk from testifying as a witness in Appellee's trial based on the Commonwealth's purported discovery violation.

When clarifying its prior Order, the trial court stated as follows: "I'm speaking of any documentation that the FBI or the police department have that supports the finding or it supports that paragraph in their indictment that states that this officer falsified documents, as we don't know what those documents -- I don't know if they're documents generated by the police department, documents generated by the FBI.  I just know, by the detective's testimony, that there are documents out there."  N.T. 12/15/14, at 7-8.

On December 22, 2014, the Commonwealth filed an interlocutory appeal pursuant to Pa.R.A.P. 311(d).  **See Commonwealth v. Smith**, 955 A.2d 391, 392 n.3 (Pa. Super. 2008) (*en banc*) (noting "that the Commonwealth was entitled to take an appeal from the trial court's [discovery] ruling").

The Commonwealth presents one issue for our review:

> Did the lower court err in barring the Commonwealth from presenting the testimony of a police officer as a sanction for not producing discovery materials that were in the exclusive possession and control of the federal government?

Commonwealth's Brief at 4.

"Decisions involving discovery matters are within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." **Smith**, **supra** at 394. While the trial court retains the discretion to fashion an appropriate remedy when a party has violated the discovery rules, such discretion is not unfettered. **Id.** at 395. "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Antidormi**, 84 A.3d 736, 749-50 (Pa. Super. 2014) (citations omitted).

The Commonwealth avers that the trial court erred in precluding Officer Dmytryk's testimony at trial as a sanction for its purported violation of both the discovery rules and **Brady**.

Pre-trial discovery in criminal cases is governed by Pennsylvania Rule of Criminal Procedure 573. The rule lists certain items and information that are subject to mandatory disclosure by the Commonwealth when they are: (1) requested by the defendant, (2) material to the case, and (3) within the possession or control of the prosecutor.

Relevant to this appeal, mandatory discovery includes:

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

Pa.R.Crim.P. 573(B)(1)(a).

- 10 -

The Rule also contains a remedy provision, which provides:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).

"[W]here the evidence is equally accessible or inaccessible to both the Commonwealth and the defense, the defense cannot use the discovery rules against the Commonwealth for its failure to produce the evidence." *Commonwealth v. Dent*, 837 A.2d 571, 585 (Pa. Super. 2003) (citation omitted). "Where evidence is equally accessible to both the prosecution and the defense, the latter cannot employ [the discovery rules] against the Commonwealth. The converse is also true where evidence is equally inaccessible, *i.e.*, the defense cannot use [the discovery rules] as a means to force the Commonwealth to produce evidence to which the Commonwealth has no access, either." *Commonwealth v. McElroy*, 665 A.2d 813, 821 (Pa. Super. 1995).

As our Supreme Court has noted, "[t]he law governing alleged *Brady* violations is well-settled." *Commonwealth v. Lambert*, 884 A.2d 848, 853 (Pa. 2005). It is a violation of a defendant's right to due process for the Commonwealth to "withhold[] evidence that is favorable to the defense and

material to the defendant's guilt or punishment." *Smith v. Cain*, 565 U.S. 73, 75 (2012) (citing *Brady*).

To prevail on a claim that the Commonwealth has committed a *Brady* violation, "an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (citations omitted).

"Pursuant to *Brady* and its progeny, the prosecutor has a duty to learn of all evidence that is favorable to the accused which is known by others acting on the government's behalf in the case, including the police." *Id.* (citation omitted). Thus, the Commonwealth's obligation "extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution." *Id.*

Significant to this appeal, our Supreme Court has clarified that "the Commonwealth's *Brady* obligation does not extend to information that is not in its possession, but rather is in the possession of the federal government, a different governing authority." *Commonwealth v. Roney*, 79 A.3d 595, 610 (Pa. 2013). *See also Commonwealth v. Simpson*, 66 A.3d 253, 267 (Pa. 2013) ("While the prosecution is responsible for ensuring the government's *Brady* responsibilities are met as regards evidence under the control of the

police, [] we have not held Commonwealth prosecutors responsible under ***Brady*** for information held by federal authorities…").

With respect to materiality, "the mere *possibility* that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." ***Commonwealth v. Miller***, 987 A.2d 638, 655 (Pa. 2009) (citation omitted).

After careful review, we conclude that the trial court erred as a matter of law in concluding that the requested material is "mandatory discovery" under Pa.R.Crim.P. 573(B)(1)(a). In order to qualify as mandatory discovery, Appellee was required to identify and explain the actual evidence at issue. ***See Miller***, ***supra*** at 655 ("the mere *possibility* that an item of undisclosed information might have helped the defense. . . does not establish materiality in the constitutional sense."). Without such specificity, the dictates of Pa.R.Crim.P. 573(B)(1)(a) cannot be met as it is not possible to determine whether the material exists, whether it is relevant and material, and whether the Commonwealth possesses the material. Appellee has utterly failed to meet this important initial burden.

Moreover, whatever the nature of this evidence, the court concluded it was not within the possession or control of the attorney for the Commonwealth. When the Commonwealth asserted that it had "passed all of the documents" under its control, the trial court replied, "I know that's your

representation, and I'm not doubting what you're representing to the Court." N.T., 12/15/14, at 8-9. When the Commonwealth asked the trial court to make a formal finding on this point, the trial court agreed and stated as follows: "I will put on the record that the Commonwealth has advised the [c]ourt -- and I take your representation as true -- that you have passed every bit of documentation provided to you by the [PPD] as their complete file." N.T., 12/15/14, at 10-11.

The trial court later opined that Sergeant Deacon's testimony established that there was, in fact, evidence presented to the federal grand jury to substantiate the grand jury's allegations that, with respect to Mills, "Officer Dmytryk falsified the PARS report and misrepresented facts of the case." The court noted, however, that because of grand jury rules, Sergeant Deacon could not specify what evidence corroborated Paragraph 87 in the federal indictment. Trial Court Opinion, 6/20/16, at 14.

Thus, even the trial court could only speculate about the nature of the requested information. *See*, *e.g.*, *id.* at 13-14 (referring to the unspecified materials as "requested materials," "requested files/documents" that "could be favorable," "such evidence," "the requested items," "known favorable evidence"). Appellee may not rely on his own or the trial court's speculation in order to establish materiality. *See* Pa.R.Crim.P. 573(B)(1)(a). Thus, the trial court erred as a matter of law in concluding that the potential material is mandatory discovery under Pa.R.Crim.P. 573(B)(1)(a).

With respect to Appellee's contention that the Commonwealth violated **Brady**, as described above, the PPD did not and could not possess the evidence pertaining to the federal indictment's Paragraph 87 because the materials in question are protected by grand jury secrecy rules. **See** Fed.R.Crim.P. 6(e)(2). Our case law provides that the Commonwealth's **Brady** obligation does not extend to this information possessed exclusively by federal authorities. **See Weiss**, **supra** at 783; **Roney**, **supra** at 610; **Simpson**, **supra** at 267. Thus, the trial court also erred as a matter of law in concluding that the Commonwealth violated **Brady**.

Based on the foregoing, we conclude that the trial court erred as a matter of law in precluding Officer Dmytryk from testifying as a witness in Appellee's trial.

Order reversed. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2017

- 15 -