J-S73015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KERRY GATHAN SAWYERS, JR. :
:
Appellant : No. 490 MDA 2019

Appeal from the Judgment of Sentence Entered March 19, 2019
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001965-2018

BEFORE: SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED APRIL 24, 2020**

Appellant, Kerry Gathan Sawyers, Jr., appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas, following his jury trial convictions of one count each of criminal trespass, disarming law enforcement, and resisting arrest.[1] After the jury's verdict was recorded, the trial court found Appellant guilty of summary criminal mischief.[2] After careful review, we affirm.

The trial court set forth the relevant facts and procedural history as follows:

> At approximately 9:40 p.m. on July 4, 2018, Lower Allen Township Police Officers were directed to 820 Lisburn Rd. Apt 513,

---

[1] 18 Pa.C.S. § 3503(a)(1)(ii), 18 Pa.C.S. § 5104.1(a)(1), and 18 Pa.C.S. § 5104, respectively

[2] 18 Pa.C.S. § 3304(a)(5). The jury found Appellant not guilty on two counts of aggravated assault, 18 Pa.C.S. § 2702(c), and one count of criminal trespass, 18 Pa.C.S. § 3503(a)(1)(ii).

to respond to an active burglary. The Cumberland County 9-1-1 Emergency Communication Center dispatched a report that a male had kicked in the door of an apartment and was now standing inside. Officer [Bryan] Rennie, Corporal [Richard] Tamanosky, and Officer [Katie] Justh arrived on scene. The suspect was described as a black male with no shirt and red sweatpants. Officers Rennie and Justh responded to the victims in apartment 513, and Corporal Tamanosky remained in the first floor lobby in case the suspect came downstairs.

Officers Rennie and Justh made contact with victims Connie Showers, the tenant of apartment 513 who had called the police, and her adult daughter Tisha Dominick. The victims confirmed they were unhurt and revealed [Appellant] is the boyfriend of victim-Dominick who lives in apartment 814 of the same complex. Victim-Dominick reported to the officers that [Appellant] had probably left the building. Officer Justh told Officer Rennie that she would check apartment 814 to see if [Appellant] had gone upstairs.

Officer Justh used the elevator, and upon exiting, she observed a reflection of a person in the glass fire doors to her right. She cautiously walked down the hallway and soon observed a male matching the suspect's description exit apartment 814. Officer Justh, dressed in badged police uniform, asked to speak with [Appellant], but he did not respond. She immediately identified herself as a police officer, and [Appellant], whose back was to the officer, leaned against the wall railing and began moving backwards toward Officer Justh. As Officer Justh could not see [Appellant's] hands, she began giving [Appellant] audible commands to get on the ground and onto his stomach. She repeatedly yelled these commands approximately 20 times.

[Appellant], who was still moving toward Officer Justh, began rolling against the railing, looked at Officer Justh, but he still refused to comply with her commands. [Appellant's] actions and noncompliance with instructions led her to believe [Appellant] was under the influence of drugs; a fact [Appellant] later admitted at trial. Officer Justh drew her firearm and pointed it at [Appellant] but again [Appellant] refused to comply and started to advance toward Officer Justh with his arms raised and fists clenched. Officer Justh backed away, transitioned from her firearm to her Taser, turned the Taser on, and yelled at [Appellant] to stop or he was going to get tasered.

- 2 -

Despite multiple warnings [Appellant] continued to move toward Officer Justh in an aggressive manner, and she tasered [Appellant] who then momentarily fell to the ground screaming; however, [Appellant] quickly rolled over and stood up. He again advanced towards Officer Justh, and in an aggressive manner, swung his arms towards her head and face. Officer Justh tasered [Appellant] a second time and he fell backwards but still refused to comply. To escape officers[, Appellant] ripped the Taser wires imbedded in his chest, broke down the door—head first—to apartment 812, and forcibly entered the apartment.

Once inside, [Appellant] tried to force the broken door shut. Officer Justh radioed dispatch that she had a male resisting arrest, he had been tasered, and had broken into apartment 812. Officer Rennie arrived and Officer Justh changed the cartridge on her Taser.

Officers Rennie and Justh tried to force open the door that [Appellant] was pushing shut. Officer Justh observed an occupant inside the apartment; an elderly female, later identified as victim-Hannalyn Kiser. As the officers attempted to force the door back open, Officer Rennie attempted to taser [Appellant] from around an opening in the door. [Appellant] grabbed hold of Officer Rennie's Taser, and as [Appellant] and Officer Rennie struggled over control of the Taser, Officer Justh was struck in the left arm/shoulder with the current from the Taser.

[Appellant] charged out of apartment 812 and towards Officer Justh. Officer Rennie yelled at Officer Justh to taser [Appellant] again. As [Appellant] aggressively advanced toward Officer Justh, she tasered [Appellant] again. During this tasering one probe entered [Appellant], and the other probe entered Officer Rennie's thigh temporarily incapacitating both men; [Appellant] fell backwards onto Officer Rennie, and both men fell to the floor. [Appellant] rolled to his side, Officer Rennie pushed him off, and during the scuffle [Appellant] began to grab at the items on Officer Rennie's utility belt—knocking the radio loose and opening the pouch to the officer's ammunition magazines. [Appellant] attempted to get ahold of Officer Rennie's gun and generally continued to resist.

[Appellant] tried again to re-enter apartment 812, but Officer Rennie again tasered [Appellant]. Corporal Tamanosky arrived and assisted in finally restraining and cuffing [Appellant].

During the struggle Officers Rennie and Justh suffered injuries consisting of visible bruises, welts, scratches, red marks, and bleeding from the Taser puncture wound. Officers held [Appellant] to the ground while waiting for additional units to arrive and assist.

Trial Court Opinion, 7/12/19, at 8–13 (footnotes and record references omitted).

Appellant was sentenced on March 19, 2019, to a term of confinement of twenty-four to sixty-eight months followed by twelve months of probation. Trial Court Opinion, 7/12/19, at 5. This timely appeal followed, and Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for review:

I. Did the trial court commit an abuse of discretion in limiting the Defense's access to witness statements and training records by denying the defense motion to compel discovery and granting Lower Allen Township's motions to quash subpoenas?

II. Did the trial court abuse its discretion in allowing Officer Justh to testify about her training regarding the use of tasers after limiting the Defense's access to discoverable materials necessary for a full and complete cross-examination?

III. Did the trial court abuse its discretion in allowing Officer Justh to read verbatim passages from her preliminary hearing testimony that were outside the scope of cross examination and otherwise inadmissible under the Pennsylvania Rules of Evidence regarding out-of-court statements?

Appellant's Brief at 7.

Appellant first argues the trial court abused its discretion when it limited his access to witness statements and training records by denying Appellant's motion to compel discovery and granting Lower Allen Township's motions to quash subpoenas. Appellant claims the disclosure of these documents was

- 4 -

required under **Brady v. Maryland**, 373 U.S. 83 (1963) and its progeny, the due process guarantees in the Pennsylvania and United States Constitutions, and Pa.R.Crim.P. 573. Appellant's Brief at 28.

On November 29, 2018, Appellant served seven subpoenas on the Lower Allen Township Police Department requesting, *inter alia*, copies of the police department's policies on the use of force and interaction with intoxicated individuals, and any records of the use of force on the night of the incident involving Appellant. Appellant also sought access to the complete personnel files of Officers Rennie, Tamanowsky, and Justh, including information regarding the officers' training in use of force, interaction with intoxicated individuals, and use of tasers. After the department filed motions to quash the subpoenas, Appellant filed a motion to compel discovery of "use of force," "workers compensation," and "exposure" forms completed by the three officers.[3] Motion to Compel, 12/21/18, at unnumbered 1. Appellant averred that the documents requested in the motion to compel were discoverable under Pa.R.Crim.P. 573(B)(1)(f), Pa.R.Crim.P. 573(B)(2)(a)(i), and **Brady**, 373 U.S. at 87. Motion to Compel, at unnumbered 2.

---

[3] In response to a defense discovery request, Officer Rennie stated that he had completed a "use of force" form relevant to Appellant's arrest. Although the officer indicated that the form was "attached," it was not included. Motion to Compel, 12/21/18, at unnumbered 1. The record does not provide any information concerning whether Officers Justh and Tamanowsky also completed a "use of force" form.

On January 15, 2019, the trial court held a hearing on the motion to compel and also entertained argument on the motions to quash.[4]  On January 25, 2019, the trial court granted the motions to quash. Further, after conducting an *in camera* review of the documents produced by the Commonwealth in response to the motion to compel, the court denied that motion.[5]  As to the documents provided by the Commonwealth, the trial court noted:  "The Commonwealth's exhibits 1, 2, and 3, as well as the court requested electronically sought records that [have] been duplicated to a thumb drive **SHALL BE SEALED** and preserved in the Clerk of Courts records to be made available to appellate court(s) in the event of an appeal."  Order, 1/25/19, at unnumbered 1 (emphasis in original).

The trial court explained its reasoning for these rulings, as follows:

[Appellant's] claims that denying his motion to compel and quashing the Defense's subpoenas violated his due process rights and were an abuse of the court's discretion, are wholly without merit.  The record reveals . . . that although [Appellant's] subpoenas were overbroad, unspecific, and lacked articulable

_____

[4]  The trial court was unaware that the motions to quash the subpoenas were pending when the hearing commenced.  During the course of the proceeding, however, the Commonwealth provided a copy of the motions to the trial court, and defense counsel explained the substance of the documents she was requesting from the police department.  N.T. (Omnibus Pretrial Motions Proceeding), 1/15/19, at 6, 8.

[5]  We glean from our review of the hearing transcript that the trial court was provided only with a "use of force" form authored by Officer Rennie.  N.T. (Omnibus Pretrial Motions Proceeding), 1/15/19, at 3 (wherein the Commonwealth referred to use of force form in the singular, and the trial court noted a prior discussion with the Commonwealth regarding "things the officer said **he** had completed") (emphasis added).

reasons to believe that inspection would lead to the discovery of some relevant evidence, the court, out of an abundance of caution, performed an *in camera* review of the documents within the possession and control of the Commonwealth but found no exculpatory evidence, and the review further supports denying [Appellant's] overbroad and general requests.

\* \* \*

[Appellant's] requests for voluminous records were repetitive, burdensome, unreasonable, and broadly made without regard to the relevance to [Appellant's] case. The record further reveals that [Appellant] failed to establish that the discovery request was either material to the preparation of his defense or a reasonable request. *See* Pa.R.Crim.P. 573(B)(2)(a)(iv).

The "statements" by the victim-officers were contained in their personnel files and workers' compensation files. These *pro forma* records, not statements, were examined by the court and deemed not to be material toward exonerating [Appellant]. Indeed, the reports are favorable to the Commonwealth's allegations in that they report on the job injuries, as required by law, and corroborate the charges for bodily injuries to the officers. None of these reports in any way absolve [Appellant]. The claim that the lack of reports hampered the defense is belied by the fact that even without the requested files [Appellant] had the opportunity to fully cross examine Officer Justh about her training in the use of force, more specifically the use of a Taser, ostensibly this cross-examination led the jury to acquit [Appellant] of the charges involving an offensive assault on police officers. Accordingly, [Appellant] did not suffer any impingement upon his due process rights.

Instantly, as it was in [***Commonwealth v. Garcia***, 72 A.3d 681 (Pa. Super. 2013),] it naturally follows that because [Appellant] has failed to establish materiality or reasonableness, the disclosure sought by [Appellant] would not be in the interest of justice. [Appellant] has no right to unfettered access to files not in his possession, nor may he search untrammeled through Commonwealth files in order to argue the relevance of material therein. As there was no reasonable and specific basis to permit [Appellant] to review the officers' personnel and other files, including personal information, [Appellant's] claims of error are meritless and warrant no relief.

Trial Court Opinion, 7/12/19, at 18, 21–22 (footnotes omitted).

"Decisions involving discovery matters are within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." ***Commonwealth v. Santos***, 176 A.3d 877, 882 (Pa. Super. 2017) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id.*** (quoting ***Commonwealth v. Antidormi***, 84 A.3d 736, 749–750 (Pa. Super. 2014)). "Even when a defendant can prove an error in the admission or exclusion of testimony, it is not enough to warrant a new trial unless he can also prove that he was prejudiced by such error." ***Commonwealth v. Beltz***, 829 A.2d 680, 682–683 (Pa. Super. 2003).

At the outset, our review of the discovery issue is hampered by an incomplete record certified on appeal. The thumb drive supposedly memorializing Commonwealth Exhibit 1 (use of force report), Exhibit 2 (worker's compensation forms submitted by the three officers), and Exhibit 3 (exposure forms for the three officers), did not include Exhibit 1, the use of force report.[6] Additionally, although it appears that the Commonwealth

_____

[6] Furthermore, the thumb drive was not part of the trial court record certified on appeal and was produced only after inquiry and request by the Prothonotary of this Court.

provided the Lower Allen Township Police Department use of force policy to the trial court, there is no indication if that document was preserved.[7] Finally, we cannot discern from our review of the transcript of the omnibus motion hearing the nature of the "electronic copy of additionally stored records" referenced in the trial court's order denying the motion. Order, 1/25/19, at unnumbered 1.

"[T]his Court may consider only the facts that have been duly certified in the record when deciding an appeal." **Commonwealth v. Kennedy**, 151 A.3d 1117, 1127 (Pa. Super. 2016) (citation omitted). It is the appellant's responsibility to ensure that the Court has the complete record necessary to review his claim. **Id.** (citation omitted). When an appellant fails to provide the court with the necessary items for review, the claim is waived. **Id.** (citation omitted). We will not find waiver in this case, however, because it is not apparent whether the above-described documents were ever included in the trial court record; nor can we determine whether Appellant had access to these documents when perfecting his appeal. In any event, we can resolve the discovery issues based upon the record before us.

We first address whether the trial court erred when it denied Appellant's motion to compel discovery of use of force, worker's compensation, and

_____

[7] **See** N.T. (Omnibus Pretrial Motions Proceeding), 1/15/19, at 3. ([Commonwealth]: "What we have, Judge, we have the use of force report for you to review, as well as the policy on use of force.").

exposure forms completed by Officers Rennie, Tamanowsky, and Justh. The trial court determined that these records were not discoverable under Pa.R.Crim.P. 573(B)(2)(a)(iv) because Appellant did not establish that the discovery request was either material to the preparation of his defense or was reasonable. Trial Court Opinion, 7/12/19, at 21. The trial court also offered that his *in camera* review of the documents revealed no information helpful to exonerating Appellant. *Id.*

On appeal, Appellant disputes the trial court's conclusion that the discovery sought in his motion to compel was immaterial to his guilt. Appellant contends that "the pertinent question when determining whether the Commonwealth acted improperly when it fails to disclose evidence is whether it could reasonably have predicted possible defense strategies. If it could, then the prosecutor will be held to reasonable anticipation of what evidence in his possession might be material." Appellant's Brief at 32 (quoting *Commonwealth v. Hanford*, 937 A.2d 1094, 1100 (Pa. Super. 2007) (internal citation and quotations omitted)). Appellant asserts that the allegations against him were premised on a theory that he acted unreasonably, recklessly, and aggressively towards the officers, compelling them to use substantial force in order to subdue him. Thus, Appellant urges that inquiry into the reliability of the police witnesses was paramount to his defense, and the prosecution should have anticipated this strategy. Appellant's Brief at 32–33.

While we agree with the trial court that the police officers' statements recorded on the worker's compensation and exposure forms were not material to the case against Appellant, we cannot definitively state the same for the information that may have been disclosed on the use of force form. However, because this form was not included in the thumb drive forwarded to this Court, we will not speculate as to its contents. Nonetheless, even assuming this document was discoverable under Pa.R.Crim.P. 573 and/or **Brady**, Appellant is not entitled to a new trial because he cannot demonstrate the requisite prejudice resulting from a violation of either the procedural rule or the Supreme Court decision.

Pa.R.Crim.P. 573 reads in relevant part:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\* \* \*

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence;

\* \* \*

(2) *Discretionary With the Court.*

(a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury)

and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

* * *

(ii) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial.

Pa.R.Crim.P. 573(B)(1)(f), (B)(2)(a)(ii).

"A violation of discovery [under Pa.R.Crim.P. 573] does not automatically entitle appellant to a new trial. Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure." *Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003) (internal citations and quotations omitted). Furthermore,

To demonstrate a *Brady* violation, Appellant must show that: (1) the prosecution concealed evidence; (2) which was either exculpatory evidence or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment. *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). To show prejudice, he must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability for these purposes is one which "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

*Commonwealth v. Simpson*, 66 A.3d 253, 264 (Pa. 2013) (some internal quotations omitted).

At the omnibus pretrial hearing, defense counsel explained why she was requesting the information addressed in her motion to compel:

[Defense Counsel]: The reason I am requesting those records is because they are eyewitness statements about the incident at hand in which [**Appellant**] **is accused of aggravated assault**. There [are] allegations that there was a tussle over a taser and [Appellant] was tased multiple times. So I am seeking to have a complete record of all eyewitness statements so that I can prepare for a constitutionally robust cross examination on behalf of [Appellant].

N.T. (Omnibus Pretrial Motions Proceeding), 1/15/19, at 8–9 (emphasis added). Obviously, the fact that Appellant was acquitted of aggravated assault abrogates any finding of prejudice under *Brady*, 363 U.S. at 87 ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. . . ."). Furthermore, even if Officer Rennie's use of force form included statements implicating the trial evidence supporting Appellant's convictions of disarming a police officer and resisting arrest, both Officers Justh's and Tamarowsky's trial testimony corroborated Officer Rennie's version of events concerning the interaction with Appellant.

As to the question of prejudice arising from a Pa.R.Crim.P. 573 violation, Appellant presented a cognizable argument that prior statements by witnesses can be discoverable under that rule. He does not, however, aver in his brief that he was prejudiced by the failure to disclose those statements. Additionally, Appellant has not advanced any argument that his trial strategy changed traceable to the withheld information. Appellant's defense was

focused on the reliability of the police officers. While Appellant posits that the withheld documents might have bolstered the effectiveness of his cross-examination, he does not claim that he abandoned a tactical decision to impeach the officers' credibility because he did not have access to their prior statements. Therefore, having failed to demonstrate prejudice under either *Brady* or Pa.R.Crim.P.573, Appellant is not entitled to a new trial on this basis.

We next address whether the trial court erred when it quashed the subpoenas. The subpoenas originally demanded numerous documents. However, at the pretrial hearing, defense counsel limited the scope of her request to the prior witness statements that were the subject of the motion to compel and the training and certification records included in the three officers' personnel files. N.T. (Omnibus Pretrial Motions Proceeding), 1/15/19, at 10.

The trial court granted the motions to quash, reasoning as follows:

> In order to obtain the personnel records of an officer, a defendant must first articulate a reasonable basis for his request; a criminal defendant is not entitled to a "wholesale inspection" of that file. *See, Commonwealth v Mejia-Arias,* 734 A.2d 870,876 (Pa. Super. 1999). "As for in camera review, the Pennsylvania Supreme Court has held that a defendant is entitled to court inspection of investigatory files only where there is an articulable reason to believe that inspection would lead to the discovery of some relevant evidence." *Commonwealth v. Blakeney,* 946 A.2d 645, 66 (Pa. 2008). Counsel's stated intention to mount a vigorous cross examination of the witnesses does not meet the prerequisite for the inspection of the personnel files.
>
> "A defendant is entitled to a court inspection of the Commonwealth's investigatory files only when there exists at least

some reason to believe the inspection would lead to the discovery of evidence helpful to the defense." ***Commonwealth v. Gartner***, 381 A.2d 114, 120 (1977). By separate Omnibus Motion the officer completed administrative papers were reviewed by the [c]ourt even though no valid reason given herein for said inspection and found not to have discoverable material. Furthermore, the information contained in any law enforcement policy is protected for officer and public safety absent there being a coherent reason for said inspection, again there is none herein.

Order, 1/25/19, at 1–2.

We have previously addressed whether the officers' statements were discoverable and concluded that no prejudice ensued from the failure to disclose these documents. Moreover, we agree with the trial court that Appellant failed to proffer a reason to believe that the information included in the officers' personnel files concerning their training and certification would lead to the discovery of material evidence. A defendant must be able to articulate a reasonable basis for any inspection demanded of police personnel files. ***Commonwealth v. Mejia-Arias***, 734 A.2d 870, 876 (Pa. Super. 1999).

At the hearing, defense counsel explained the relevance of the training and certification information:

> I don't need the complete personnel records, but I need to be able to prepare for an examination of those witnesses. If they get on the witness stand and say, I have extensive training in the use of force and I follow[ed] that training to a T, I am not able to cross-examine them without knowing what that training actually was.

N.T. (Omnibus Pretrial Motions Proceeding), 1/15/19, at 10. A representation that the information sought **might** be helpful in cross-examining the officers about their activity at the crime scene does not satisfy the materiality

requirement justifying release of police personnel files. ***See Commonwealth v. Belenky***, 777 A.2d 483, 488 (Pa. Super. 2001) (More than a mere assertion that the information disclosed might be helpful is necessary). Even imagining a scenario where the requested training and certification documents were made available, and the officers' trial testimony revealed that their actions were not in conformity with their training, such a revelation would only be reflective of the officers' credibility concerning their own actions and would not be probative of Appellant's guilt or innocence.

For the above reasons, we conclude that Appellant has failed to demonstrate prejudice flowing from either of the trial court's discovery orders. Therefore, Appellant's assertion of error involving the decisions to deny the motion to compel and grant the motion to quash is meritless.

Appellant's second claim is that the trial court abused its discretion when it permitted Officer Justh to testify regarding her training in the use of tasers. As previously described, "[a]dmission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion." ***Santos***, 176 A.3d at 882. Further, to warrant a new trial on this basis of an erroneous evidentiary ruling an appellant must prove that he was prejudiced by such error. ***Beltz***, 829 at 682–683.

At the motion to compel discovery and the motions to quash the subpoenas hearing, Appellant's counsel explained that she was seeking

disclosure of documents related to the responding officers' training in order to determine if they followed department policy governing the use of tasers. ***See*** N.T. (Omnibus Pretrial Motions Proceeding), 1/15/19, at 10.

On appeal, Appellant contends that in light of the trial court's pretrial ruling precluding access to information on the subject of Officer Justh's training and certification, the officer's trial testimony regarding the use of tasers was inadmissible. The pertinent testimony was elicited during re-direct examination:

> Q. There was also a number of questions regarding the taser's cartridges, that kind of thing. Do you have any particular training as it relates to tasers?
>
> A. Just the training my department gives us when we initially got the tasers, and every year we have to do recertification, but I am not an instructor.
>
> Q. You are not an instructor?
>
> A. No.
>
> Q. Do you have to get certified to use the taser?
>
> A. Yes, we had to go through training. And the initial—
>
> [DEFENSE COUNSEL]: Judge, I am going to object to questioning about Ms. Justh's training in light of the pretrial motions that were filed.
>
> THE COURT: Overruled.
>
> THE WITNESS: I am sorry? The question?
>
> [COMMONWEALTH]: I believe where we left off was do you have to be - do you receive training even if you are not an instruct

A. Yes. Yes. Our initial training is –

* * *

Q. And you have to be certified?

A. Yes.

Q. And, I am sorry, did you say that certification was yearly?

A. Yes.

Q. On July 4th, 2018, was your certification up to date?

A. Yes.

Q. How many times prior to that year had you been certified?

A. Every year. And I want to say we had been carrying the tasers for -- I honestly don't -- between 6 to 8 years maybe.

Q. And was there any time where there was a break between when you were certified?

A. You mean where I was not certified?

Q. Yes?

A. No.

Q. And so you said you have had the tasers for about 6 to 8 years?

A. I might be off on those numbers.

THE COURT: Yeah. She is trained. You have got that.

N.T. 1/29/19, at 157–159.

It is significant that Officer Justh's testimony that she was trained in the use of tasers and that annual recertification was required was admitted prior

to defense counsel's objection. The testimony after the objection concerned only the number of times Officer Justh was recertified and that her certification was current on the date of the crimes. The admissibility of this mostly duplicative evidence clearly was not "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." *See Santos*, 176 A.3d at 882.

Furthermore, at the pretrial motion hearing, Appellant's counsel represented that she was seeking disclosure of the training information in anticipation of Officer Justh's potential testimony that she followed department training when she employed her taser on Appellant. N.T. (Omnibus Pretrial Motions Proceeding), 1/15/19, at 10. At trial, Officer Justh did not testify to the specifics of her training or whether she acted in conformity with that training on the night of the criminal activity. Additionally, because the Commonwealth opened the door on this topic, Appellant had the opportunity to cross-examine Officer Justh on her training and certification. Thus, there was no abuse of discretion in the admission of this benign testimony that Officer Justh was trained in taser use and was recertified on an annual basis.

Appellant's final issue is that the trial court abused its discretion when it permitted Officer Justh to read an excerpt from her preliminary hearing testimony because it was outside the scope of the cross-examination and

violated the Pennsylvania Rules of Evidence governing out-of-court statements. Appellant's Brief at 43.

On direct examination, Officer Justh described Appellant's behavior after she tased him the first time: "[H]e was making noises while he was on the ground, and that quickly he got back up and started swinging at my face[,] and I tased him a second time. . . . He had fists and he was punching." N.T. 1/29/19, at 113. During cross-examination, defense counsel attempted to impeach this testimony with the officer's preliminary hearing testimony:

> [DEFENSE COUNSEL]: And on direct you testified that when he got back up he started swinging his fists at you?
>
> [OFFICER]: Yes.
>
> [DEFENSE COUNSEL]: I would like you to continue reading along with me, page 10 of that preliminary hearing transcript, line 20. This is right after the sentence -- I will start from the beginning. Answer, it did strike him. He did fall to the ground right at my feet and then his head struck and then he started screaming. He became aggressive, jumped up again, [and] tried to come towards me. I popped the taser again. He was able to run around the corner. Did I read that correctly?
>
> [OFFICER]: Yes.
>
> [DEFENSE COUNSEL]: At the preliminary hearing you did not testify that he raised his fists to you?
>
> [OFFICER]: No, but I stated he became aggressive and came towards me.

*Id.* at 138–139.

On redirect, the Commonwealth posed some follow-up questions to Officer Justh regarding her preliminary hearing testimony recorded on page

ten of the transcript.  When the Commonwealth then asked Officer Justh to

read from page thirteen of the transcript, the following transpired:

> [COMMONWEALTH]:  If I could direct you to page 13 of the transcript.
>
> THE COURT:  Give me a second. I didn't look at that page yet. Where are you looking on page 13?
>
> [COMMONWEALTH]:  The lines 4 through 7.
>
> THE COURT:  All right.  That is beyond the scope of her cross examination.
>
> [DEFENSE COUNSEL]:  Thank you, Judge.
>
> [COMMONWEALTH]:  I understand that, Judge. This is the first time that we have been provided with this transcript.
>
> THE COURT:  Is that true?
>
> [DEFENSE COUNSEL]:  It has never been requested.
>
> THE COURT:  Okay. I change my decision.  I'll let you look at page 13.
>
> [DEFENSE COUNSEL]:  Judge -
>
> THE COURT:  She hasn't seen it, is what I just heard.  This officer has never seen the transcript.
>
> [DEFENSE COUNSEL]:  I did not ask any questions about the content of what is on page 13 or impeach her with any - - attempt to impeach her with any statements from page 13.  The District Attorney is seeking to elicit emotional testimony that is outside the scope of cross examination and should not be admitted at this point.
>
> THE COURT:  Well, it has already been testified to.  It is not redirect based on what your cross examination was, but they hadn't seen it until you brought it in so I am giving them the latitude.

- 21 -

[COMMONWEALTH]: If you could read, starting at line 4, the question that was read and what your response was?

* * *

[OFFICER]: So during this entire event, how were you in fear for your life at any point?

[COMMONWEALTH]: What was your response?

[OFFICER]: My response was I was in fear for my life when he approached me initially. His look, coming at me, I was fearful, then I did my job. I mean I just - - I reacted and did my job and did what I had to do but it was - - you know, I was fearful the entire time.

N.T., 1/29/19, at 161–162.

The trial court addressed Appellant's argument that portions of the redirect examination were beyond the scope of the cross-examination and, therefore, inadmissible. The court stated:

[T]he Commonwealth's line of questioning on redirect arose from the same transcript page that defense counsel had read into the record and was plainly within the same scope raised on cross examination regarding when the officer's gun was first pulled. Further, there is nothing emotional about the testimony presented on redirect, and the redirect testimony was admissible as a consistent statement used to rehabilitate the credibility of the witness. As the testimony was admissible under the rules of evidence, there was no abuse of discretion.

Trial Court Opinion, 7/12/19, at 26–27.

We take issue with the trial court's factual findings and reasoning. First, the redirect testimony under scrutiny was from a transcript page different from the page that defense counsel referenced in her cross-examination of Officer Justh. *See* N.T., 1/29/19, at 136 (wherein defense counsel read from page ten of the transcript); *id*. at 161 (wherein the Commonwealth directed

- 22 -

the witness to read from page thirteen). Additionally, defense counsel was not attempting to discredit Officer Justh's recollection concerning when she drew her weapon; rather, counsel sought to highlight a discrepancy in Officer Justh's trial testimony that Appellant was waving his fists at her, a fact that she did not mention at the preliminary hearing. **See** N.T., 1/29/19 at 139.

We further disagree with the trial court that the redirect testimony was admissible as a consistent statement used to rehabilitate the credibility of Officer Justh. Pennsylvania Rule of Evidence 613(c) instructs:

> **(c) Witness's Prior Consistent Statement to Rehabilitate.** Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> * * *
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c)(2). This provision would have authorized admission of Officer Justh's testimony from page thirteen of the preliminary hearing transcript if that excerpt concerned whether Appellant was waving his fists when he confronted the officer. That was not the case. The challenged testimony, instead, focused on Officer's Justh's fear of Appellant. **See** N.T., 1/29/19, at 162. Thus, this testimony, which was beyond the scope of the cross-examination and was not related to the purported inconsistency, should

have been disallowed.[8]  However, as explained, an error in the admission of testimony, is not enough to warrant a new trial unless an appellant can also prove that he was prejudiced by such error.  **Beltz**, 829 A.2d at 682–683.

Appellant herein has not demonstrated the requisite prejudice. Although Appellant avers that Officer Justh's recital of her preliminary hearing testimony that she feared Appellant was "emotionally triggering," in fact, it was merely repetitive of the officer's earlier trial testimony.  Appellant's Brief at 47.  When asked on direct examination if she "fear[ed] for her safety" as Appellant approached her, the officer responded:  "I felt as though if he got my firearm, he was going to kill me."  **See** N.T., 1/29/19, at 111.  Officer Justh further recounted that "[i]n fear for my life, I transitioned from my firearm to my taser because I was afraid if he got ahold of my gun he could have potentially taken my life.  **Id.** at 112.  Finally, when asked, given her "fear for her life," why she did not fire at Appellant, Officer Justh explained:  "I was more fearful that if he got a hold of my gun on that day that I would have been the one to not go home."  **Id.** at 127.  Therefore, because the jury heard repeated and consistent testimony that Officer Justh feared that Appellant was

---

[8]  We also note that although the trial court originally ruled that testimony from page thirteen of the preliminary hearing transcript was beyond the scope of Appellant's cross-examination, he reversed himself on the basis that the witness had not seen the transcript.  N.T, 1/29/29, at 161.  This is not a legally valid reason to have allowed the testimony.  **See** Pa.R.E. 613(a) (a prior inconsistent statement made by the witness to impeach "need not be shown or its contents disclosed to the witness at that time. . . .").

going to harm, and possibly kill her, her reaffirmation of this fear on re-direct examination was not so prejudicial as to mandate a new trial.

For these reasons, we affirm the judgment of sentence. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>04/24/2020</u>