J-S34032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIJUAN DESHAWN SHERWOOD | : | |
| | : | |
| Appellant | : | No. 1149 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 13, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008216-2022

BEFORE:   DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                 **FILED: October 29, 2024**

Appellant, Kijuan Deshawn Sherwood, appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County on July 13, 2023. After review, we affirm.

The relevant facts and procedural history are as follows: Appellant was charged with one count of harassment on December 27, 2022, following an incident between himself and a coworker which occurred at their workplace, the Red Robin restaurant in Monroeville, on August 27, 2022. A non-jury trial was held on July 13, 2023. The witnesses for the Commonwealth were Bre'ah Jones, the victim; Julia Ruben, a Red Robin employee; and Monroeville Police Officer Sarah Bonner, the investigating officer. Appellant testified in his own

_____

[*] Former Justice specially assigned to the Superior Court.

defense along with Regina Ross, Appellant's girlfriend who was also a Red Robin employee.

Bre'ah Jones (hereinafter, "the victim") testified that she and Appellant were working next to each other as line cooks on the date of the incident when Appellant, who she did not consider a friend, leaned over her shoulder and said she smelled good. She asked Appellant to back up, which he did. N.T. at 7, 9, 10-11. A short time later, the victim was reaching for plates and Appellant brushed his hand over her buttocks. The victim told Appellant not to touch her. N.T. at 11. Later during the same shift, Appellant again brushed his hand over her buttocks while she was using the fryer. N.T. at 11-12. The victim elbowed Appellant and again told him not to touch her. N.T. at 12. Appellant stated that he would "take [her] to the back" of the restaurant and "wear [her] ass out." N.T. at 12. Appellant touched the victim's buttocks a third time and she told him again to stop touching her. N.T. at 12. Appellant stated that the victim had a "tight ass," that it looked like she did squats at the gym, and that he "would like to put a kid in [her]". N.T. at 12-13. Finally, while Appellant was sweeping the floor, the victim testified that he "shoved one of his fingers between [her] legs, kind of cupping [her] with it." N.T. at 13. The victim reported the incidents to her manager at Red Robin, and the following day, reported the incident to police. N.T. at 13-14.

Julia Ruben testified that as coworkers at Red Robin, she and the victim were friendly. N.T. at 19-20. Ms. Ruben testified that while at work on the

date of the incident, she noticed that the victim, who was usually a positive and upbeat employee, was "freak[ed] out." N.T. at 24, 21. Ms. Ruben observed that Appellant kept getting close to the victim and saw Appellant shift his arm behind the victim's back. N.T. at 21. Ms. Ruben then saw the victim become "very, very upset." N.T. at 24, 21.

Monroeville Police Officer Sarah Bonner met with the victim and reviewed the video footage from Red Robin. N.T. at 29. Officer Bonner testified that the video showed Appellant walk past the victim and touch his right hand to her buttocks. N.T. at 30-32. Officer Bonner requested that the Red Robin manager preserve the video footage to send her a copy of it, but the manager failed to do so, resulting in the video not being available for trial. N.T. at 30.

Regina Ross testified that Appellant is the father of her child and that they were dating at the time of the incident and at the time of the trial. N.T. at 34-35. As coworkers, she had been friendly with the victim. N.T. at 35. Ms. Ross believed that the victim was at first unaware that Appellant was dating Ms. Ross because the victim acted "flirtatious" with Appellant. N.T. at 35-36. In mid-August, 2022, about two weeks before the incident in question, the victim leaned that Ms. Ross and Appellant were dating and became less friendly with Ms. Ross. N.T. at 36. Ms. Ross testified that she did not see Appellant touch the victim or hear him say anything inappropriate to her. N.T. at 38.

Appellant testified that while he thought he and the victim were friends, he never touched her in any way. N.T. at 43. He did admit to bumping into her once while he was sweeping. N.T. at 43-44, 48. When the victim reported the incidents to management that day, Appellant told the manager he did not intentionally touch her and to check the cameras. N.T. at 44-45. After the manager viewed the footage, Appellant was sent home, even though Appellant testified that the manager told him he did nothing wrong. N.T. at 44. When he returned to work two days later, the manager told him not to speak to the victim. *Id*.

At the conclusion of the testimony, Appellant was found guilty by the trial court of one count of harassment and was sentenced immediately to thirty to ninety days' incarceration. On July 21, 2023, Appellant filed a post-sentence motion asserting, *inter alia*, that the verdict was against the weight of the evidence. The motion was denied by operation of law on August 23, 2023. Appellant filed a notice of appeal on September 22, 2023, and filed a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) on October 18, 2023. The trial court filed its Rule 1925(a) opinion on February 29, 2024. This appeal follows.

Appellant raises one question for our review:

> Whether the trial court abused its discretion in denying Mr. Sherwood's post-sentence motion for a new trial where the verdict of guilty for Harassment was against the weight of the evidence?

Appellant's Br. at 4.

To begin, we recognize that,

> our standard of review for a weight-of-the-evidence claim is an abuse of discretion. As we have often reminded appellants, "An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Windslowe*, 2017 PA Super 82, 158 A.3d 698, 712 (Pa. Super. 2017). . . .
> . . .
> "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Santos*, 2017 PA Super 387, 176 A.3d 877, 882 (Pa. Super. 2017). To mount an abuse-of-discretion attack against the trial court's determination that [the] guilty verdict[ was] not so against the weight of the evidence as to shock that court's own conscience, [an appellant must] . . . demonstrate how the trial court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality.

*Commonwealth v. Rogers*, 259 A.3d 539, 541 (Pa. Super. 2021), appeal denied, 280 A.3d 866 (Pa. 2022) (emphasis omitted).

Here, Appellant contends that the court abused its discretion in denying his motion for a new trial. Specifically, Appellant argues that the court assessed the evidence in the light most favorable to the Commonwealth, which it was not obligated to do, and failed to explain why it found the defense witnesses' testimony incredible. Appellant's Br. at 10.

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: . . . communicates to or about such other

person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures." 18 Pa.C.S. § 2709(a)(4).

Here, the trial court stated,

> The evidence presented at trial showed that Appellant clearly communicated lewd and lascivious words to the victim when he engaged in unwanted behavior, which was sexual in nature, by touching the victim on her buttocks and between her legs in addition to making sexual related comments to her during the incidents.
>
> Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there was sufficient evidence to prove the elements of harassment. **See Commonwealth v. Cox**, 72 A.3d 719, 721-722 (Pa.Super. 2013)(holding that defendant's behavior of posting sexually explicit statements toward victim were made intentionally with the intent to harass, annoy, or alarm the victim and the statements were lewd in nature).
>
> . . .
>
> Here, the evidence presented at trial showed that Appellant acted with the requisite intent to support his conviction. Further, the Court did not find the testimony of Appellant and his girlfriend credible given the totality of the circumstances. [**Commonwealth v.**] **Clay**, 64 A.3d [] 1049 (holding that it is not the function of the appellate court to re-assess the credibility of the witnesses' testimony further finding that the evidence supported the defendant's conviction for harassment.) As such, this claim is without merit.

Tr. Ct. Op. at 6, 8.

Contrary to Appellant's assertion, the court did not assess Appellant's weight claim in a light most favorable to the Commonwealth. Appellant challenged both the sufficiency of the evidence and the weight of the evidence in his 1925(b) statement. **See** 1925(b) Statement, at 3. Although Appellant abandoned his sufficiency claim in his appellate brief, the trial court addressed both issues in its 1925(a) opinion. "In reviewing the sufficiency of the

evidence, we have repeatedly held that evidence must be viewed in the light most favorable to the verdict winner with all reasonable inferences therefrom." ***Commonwealth v. Gallo***, 373 A.2d 1109, 1111 (Pa. 1977). The trial court's reference to "the light most favorable to the Commonwealth" was proper because it was in regard to its analysis of the sufficiency, not weight, of the evidence. ***See*** Tr. Ct. Op. at 6. Thus, the trial court did not misapply the law.

As to Appellant's issue with the trial court's finding of credibility or lack thereof, Appellant avers, "neither Ms. Ross nor Mr. Sherwood were impeached by the Commonwealth." Appellant's Br. at 10. We may not reassess the credibility of the witnesses. ***See Commonwealth v. Sanchez***, 36 A.3d 24, 39 (Pa. Super. 2011) (stating that "this Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight."). Appellant further claims that Ms. Ross' testimony corroborated his testimony "that he did not make any sort of offensive comments or lewd remarks" to the victim. Appellant's Br. at 10. However, the transcript reveals that during Appellant's cross examination, he was questioned about the fact that he is dating Ms. Ross, who was eight months pregnant with his child at the time of the incident, and may have had an interest in her not finding out that he made sexual remarks or physical contact with another woman. N.T. at 47-48. Further, while Ms. Ross testified that she never heard Appellant make offensive comments to the victim, she was a hostess at the front of the restaurant and would go in the kitchen after bussing tables. N.T. at 37-38.

Although Ms. Ross testified to going into the kitchen often, Appellant and the victim, as cooks, would have worked exclusively in the kitchen. Thus, Ms. Ross may not have been in the kitchen at the time any remarks were made. Indeed, Appellant had an interest in not making those comments while his pregnant girlfriend was present.

We find that the trial court did not abuse its discretion in finding that the verdict was not against the weight of the evidence. The trial court as fact-finder was free to infer Appellant's intent to harass from the testimony that the victim asked Appellant multiple times not to touch her, and was free to disbelieve Appellant's testimony that he only accidentally bumped into the victim. Appellant failed to show how the court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/29/2024