**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKY DEON BOYER | : | |
| | : | |
| Appellant | : | No. 508 WDA 2023 |

Appeal from the PCRA Order Entered April 3, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014156-1999

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKY DEON BOYER | : | |
| | : | |
| Appellant | : | No. 509 WDA 2023 |

Appeal from the PCRA Order Entered April 3, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013942-1999

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

DISSENTING MEMORANDUM BY BECK, J.:          **FILED: JUNE 3, 2024**

I agree with the learned Majority that the PCRA petition at issue in this case is facially untimely, and thus, Boyer must invoke one or more of the three timeliness exceptions of 42 Pa.C.S. § 9545(b)(1) for our courts to exercise jurisdiction over his petition.  Here, Boyer raises the newly-discovered fact

_____

[*] Former Justice specially assigned to the Superior Court.

and government interference exceptions to the PCRA's time-bar. The Majority concludes that Boyer did not successfully plead and prove either exception or that he exercised due diligence in raising these claims. In my view, Boyer properly plead the newly-discovered fact exception, but I conclude that questions of material fact exist as to his claim invoking the governmental interference exception and Boyer's due diligence in raising the exceptions, which the PCRA court must address in a hearing. I would therefore vacate the PCRA court's order and remand the matter for a hearing on Boyer's petition.

In support of both claims invoking the newly-discovered fact and government interference exceptions, Boyer relies on a report issued by the Department of Public Safety, Office of Municipal Investigations (the "OMI report"), which listed three complaints lodged against Detective Logan involving abusive, coercive, and intimidating acts against criminal suspects, and a federal civil rights lawsuit filed against Detective Logan in which he was found guilty of violating a criminal suspect's constitutional rights (hereinafter the "civil rights lawsuit"). Boyer's Brief at 22; **see also** Motion to Supplement Petition for Post Conviction Relief, 7/29/2023, Exhibit 1; Amended Petition for Relief and Petition for Leave to Supplement Pursuant to the PCRA, 8/30/2022, Exhibit 2.

**Newly-Discovered Fact Exception**

With respect to the newly-discovered fact exception, Boyer argues that that the OMI report and the civil rights lawsuit demonstrated that Detective Logan had engaged in a pattern of coercive interrogation techniques with several different criminal suspects prior to interrogating and eliciting Boyer's confession. Boyer's Brief at 22. Boyer asserts that this information would have been critical to his case, as he filed a suppression motion in which he accused Detective Logan of improperly coercing his confession. *Id.* at 6-7, 23. Likewise, Boyer argues that evidence of the prior complaints about Detective Logan's interrogation tactics would have shown the jury that he was not alone in raising these allegations against Detective Logan and that consequently, the jury would have been more inclined to believe his claim that his confession was the result of coercion. *Id.* at 36. Boyer asserts, both in his PCRA petition and before this Court, that he possessed no knowledge of the other allegations relating to Detective Logan's misconduct until 2013, when he received the OMI report from a fellow inmate. *Id.* at 25-26, *see also* Amended Petition for Relief and Petition for Leave to Supplement Pursuant to the PCRA, 8/30/2022, at 14-15.

As the Majority recognizes, the newly-discovered fact exception applies where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020) (quoting 42 Pa.C.S. § 9545(b)(1)(ii)). The Majority also correctly observes

that "[t]he focus of the exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." **Commonwealth v. Burton**, 158 A.3d 618, 629 (Pa. 2017) (quotation marks and brackets omitted).

In rejecting Boyer's claim, the Majority first concludes that Boyer is not alleging the discovery of new facts, but rather "that he has discovered new sources to support his allegation of misconduct" against Detective Logan. Majority at 9. The Majority maintains that Boyer was aware of the tactics Detective Logan employed during his interrogation, as Boyer testified extensively about them during the hearing on his suppression motion. **Id.**

I cannot agree with this conclusion. Of course, Boyer was aware that Detective Logan used intimidation tactics to coerce Boyer into signing a confession, and he asserted this before the trial court. **See** N.T., 6/19-20/2000, at 51-69; 7/19-24/2000, at 416-17. But this is not the fact that Boyer raised in his PCRA petition and on appeal before this Court. Instead, the newly-discovered fact that Boyer raises is that Detective Logan engaged in a pattern or practice of utilizing intimidating and other coercive interrogation tactics on multiple different criminal defendants, resulting in the OMI report and the civil rights lawsuit. Boyer's Brief at 22-23; **see also** Motion to Supplement Petition for Post Conviction Relief, 7/29/2023, ¶¶ 8-9; Amended Petition for Relief and Petition for Leave to Supplement Pursuant to the PCRA, 8/30/2022, at 22-25. Thus, Boyer's newly-discovered facts reveal

that Detective Logan regularly and routinely employed coercive interrogation tactics on criminal suspects to elicit confessions. These new facts were previously unknown to Boyer and clearly would have supported his claim that Detective Logan improperly elicited the confession in his case.

The Majority also concludes that Boyer failed to demonstrate that he could not have discovered these facts with the exercise of due diligence. Majority at 9. The Majority points out that the OMI report was issued on October 26, 1999, and the lawsuit against Detective Logan was originally filed on March 13, 2000, and thus could have been discovered by Boyer during the pendency of his case. *Id.* at 11. Although the Majority acknowledges our High Court's decision in *Small*, which overruled the public record presumption for the newly-discovered fact exception, it nonetheless holds Boyer responsible for his failure to discover those public records prior to identifying them in the underlying PCRA petition. *Id.* Additionally, the Majority suggests that Boyer could have discovered information relating to the OMI report and the civil rights lawsuit earlier than he did because there were news stories about Detective Logan "as early as 2002" and "a Google search" about Detective Logan revealed a June 28, 2002 news article about Detective Logan's misconduct. *Id.*

I disagree with this analysis for several reasons. First, the *Small* Court clearly and entirely disavowed the public records presumption. *Small*, 238 A.3d at 1286. Thus, the Majority's decision to hold the existence of public

records, such as the OMI report and the civil rights lawsuit, against Boyer is in direct defiance of the Supreme Court's holding. Second, the Majority's reliance on Boyer's ability to access these public records through an internet search is, in my view, misplaced, as there is no indication of what, if any, access Boyer has had to the internet during his twenty-five years of incarceration. As there was no hearing on his PCRA petition, this Court simply does not possess the information necessary to ascertain what, if any, due diligence Boyer could have exercised to learn of the OMI report or civil rights lawsuit prior to the date he received the OMI report in 2013. As our Supreme Court stated in **Small**, due diligence is a "flexible concept that varies with the context of a given case." **Small**, 238 A.3d at 1284. Thus, at the very least, I conclude that the case should be remanded for a hearing to determine whether Boyer exercised due diligence in discovering the OMI report and the civil rights lawsuit.

### Government Interference Exception

Turning to the government interference exception, Boyer argues that the Commonwealth committed a **Brady**[1] violation when it failed to disclose to Boyer the OMI report or civil rights lawsuit relating to Detective Logan's misconduct during the pendency of Boyer's case. Boyer's Brief at 22. Like his newly-discovered facts claim, Boyer asserts that this information would

---

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

- 6 -

have aided his case because he filed a suppression motion in which he accused Detective Logan of improperly coercing his confession and it would have helped him make his case to the jury that his confession was the result of coercion. *Id.* at 6-7, 23, 36. Again, Boyer avers, in both his PCRA petition and on appeal, that he possessed no knowledge of the other allegations relating to Detective Logan's misconduct until 2013, when he received the OMI report from a fellow inmate. *Id.* at 25-26, *see also* Amended Petition for Relief and Petition for Leave to Supplement Pursuant to the PCRA, 8/30/2022, at 14-15.

"[T]he governmental interference exception—set forth in Section 9545(b)(1)(i) of the PCRA—requires a petitioner to establish that the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]" *Commonwealth v. Towles*, 300 A.3d 400, 415 (Pa. 2023) (quoting 42 Pa. C.S. § 9545(b)(1)(i)). "*Brady* … imposes upon a prosecutor the obligation to disclose all favorable evidence that is material to the guilt or punishment of an accused, even in the absence of a specific request by the accused." *Commonwealth v. Bagnall*, 235 A.3d 1075, 1085 (Pa. 2020). "[T]o establish a *Brady* violation, a defendant has the burden to prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the

evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued." *Id.* at 1086.

The learned Majority accurately observes that there can be no *Brady* violation "when the defense has equal access the allegedly withheld evidence." Majority at 13 (citing *Commonwealth v. Spotz*, 896 A.2d 1191, 1248 (Pa. 2006)). It concludes, however, that this proposition precludes relief to Boyer here, as there is no evidence of record indicating that the Commonwealth had in its possession "evidence of the OMI report or the lawsuit against Detective Logan[,]" and that "each party had equal access to be able to discover the information about Detective Logan at the time." *Id.* at 13-14.

Once again, I respectfully disagree. Our Supreme Court has held that "the prosecution's *Brady* obligation clearly extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution." *Commonwealth v. Burke*, 781 A.2d 1136, 1142 (Pa. 2001); *see also Commonwealth v. Santos*, 176 A.3d 877, 883 (Pa. Super. 2017) ("Pursuant to *Brady* and its progeny, the prosecutor has a duty to learn of all evidence that is favorable to the accused which is known by others acting on the government's behalf in the case, including the police.") (citation omitted).

Here, Boyer avers that the police possessed information about the OMI report and the civil rights lawsuit relating to Detective Logan's misconduct. Boyer's Brief at 22. Consequently, the Commonwealth had an obligation to disclose this information to Boyer if indeed it was in the possession of the

police. *See Burke*, 781 A.2d at 1142; *Santos*, 176 A.3d at 883. Because there was no hearing in this case, I acknowledge that we do not know what information the police possessed regarding the allegations of misconduct against Detective Logan during the pendency of Boyer's case. Nonetheless, it strains credulity to conclude that the police did not possess knowledge that one of its detectives was under investigation by the OMI and had a civil rights lawsuit pending against him.[2] Moreover, as it relates to the OMI report, it is unclear whether, and to what extent, this information would be publicly accessible. Thus, I cannot agree with the Majority's conclusion that both parties had equal access to discover the information about the allegations of misconduct against Detective Logan.

The Majority further contends that Boyer could have learned of the OMI report and the civil rights lawsuit through the exercise of "reasonable diligence."[3] This runs afoul of *Brady*. The information contained in the OMI

---

[2] Indeed, according to its website, "OMI must investigate all complaints against the Bureau of Police and must have its findings accepted by the Chief of Police." https://pittsburghpa.gov/omi/about/ (last visited 5/20/2024). Regardless, this issue of material fact could be resolved with a hearing.

[3] Section 9545(b)(1)(i) does not expressly require that a petitioner establish that s/he exercised due diligence in discovering the alleged governmental interference. *See* 42 Pa.C.S. § 9545(b)(1)(i). I acknowledge, however, that our Supreme Court has engrafted a due diligence requirement. *See Commonwealth v. Stokes*, 959 A.2d 306, 310 (Pa. 2008); *but see Towles*, 300 A.3d at 418-19 (Donohue, J., dissenting) (explaining that "[t]he plain language of these subsections of the PCRA establishes that, while the newly[-]discovered facts exception has an express due diligence requirement, the governmental interference exception does not").

report and the civil rights lawsuit demonstrated that Detective Logan had engaged in a pattern of coercive interrogation techniques with several different criminal suspects, which would have supported Boyer's claims concerning Detective Logan's conduct during his interrogation. The Commonwealth therefore had a duty to turn this information over to Boyer. *See Bagnall*, 235 A.3d at 1085-86. The Majority cites no authority, and my independent research likewise has revealed none, to suggest that Boyer was required to comb through court dockets or contact the OMI seeking information they had no idea existed at the time. Again, simply because Boyer raised claims of Detective Logan's coercive interrogation tactics as it relates to him in 2000 does not mean he possessed knowledge that other criminal defendants alleged similar experiences with Detective Logan. The PCRA court should hold a hearing to determine whether Boyer's claim of governmental interference warrants the grant of relief.

## Conclusion

I conclude that Boyer has properly raised a newly-discovered fact, but the current record is unclear whether Boyer could have ascertained these facts sooner with due diligence. I further conclude that issues of material fact exist regarding the governmental interference exception with respect to what information the police, and thus, the Commonwealth, possessed at the time of Boyer's trial regarding the allegations of misconduct against Detective Logan, and what, if any, due diligence Boyer could have exercised to earlier

discover that information.  Accordingly, I would vacate the order dismissing Boyer's PCRA petition and remand this matter to the PCRA court for a hearing to address these questions.  ***See Commonwealth v. Smith***, 244 A.3d 13, 16 (Pa. Super. 2020) ("To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.").  I therefore respectfully dissent.