J-S38039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WARREN BARROW | : | |
| | : | |
| Appellant | : | No. 2734 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009911-2021

BEFORE:   STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 9, 2024**

Appellant, Warren Barrow, appeals from the judgment of sentence entered in the Philadelphia Court of Common Pleas on September 11, 2023. After a careful review, we affirm.

The relevant facts and procedural history are as follows: At about 6:50 PM on April 4, 2021, a vehicle being driven by Appellant was pulled over for illegal window tint by Officer Kened Kristensen on the 2300 block of South 63rd Street in Philadelphia, Pennsylvania. N.T. 3/10/23, at 14, 15. The vehicle, which was owned by Appellant's girlfriend, had four occupants; Appellant was driving, Mr. Johnny Webb was in the passenger seat, and two other men were in the back seat. N.T. 3/10/23, at 15.

_____

[*] Former Justice specially assigned to the Superior Court.

Upon observing narcotics on one of the passengers, Officer Kristensen asked Appellant for consent to search the vehicle. N.T. 3/10/23, at 17. Appellant granted consent, noting that the officer was "not going to find anything in the car." *Id*. Officer Kristensen first opened the glove box compartment on the front passenger side. When he observed nothing of a criminal nature in the glove box, he tried to shut the compartment, but it would not close and became stuck. N.T. 3/10/23, at 17-18. The officer continued to examine the glove box and pressed the tabs on the side. *Id.* at 18. The compartment dropped down and Officer Kristensen observed a firearm magazine hidden in the space behind the glove compartment and the dashboard. *Id*. The officer retrieved the firearm, which he identified at trial as a "black Polymer80 handgun 9mm with no serial number, loaded with an extended magazine, containing ten live rounds." N.T. 3/10/23, at 18-19.

Upon confirming that neither Appellant nor the front seat passenger, Mr. Webb, had a license to carry a firearm, they were both arrested. N.T. 3/10/23, at 20, 22. Each was read their Miranda rights. Appellant gave a statement acknowledging that the car belonged to his girlfriend and that the firearm was not hers. Commonwealth's Ex. C-14, at 15. Appellant observed that he would likely face greater consequences than Mr. Webb because he had a criminal record, *Id.* at 13-15, and asked what would happen if Mr. Webb were to "eat" the firearm charges himself. *Id.* at 20. When the detectives responded that Mr. Webb could not take responsibility for possessing a gun that was not his

and that they would not make anyone say anything that was not true, Appellant claimed that the gun was Mr. Webb's. Commonwealth's Ex. C-14, at 20.

Appellant admitted to knowing what kind of firearm had been retrieved from behind the glove compartment, including the details of what it looked like. Commonwealth's Ex. C-14, at 17-19. He described the gun as "skinny," and said it was either a "40, 42, 43, or a 9," and a "glock." He also described the magazine and top as "normal" but said the barrel was distinctive and looked like a polymer. *Id*. Appellant compared the recovered firearm to "guns that people make," such as polymer guns that do not have serial numbers. *Id*. He stated that his DNA may be on the weapon, admitting that he had touched the gun at some point prior to it being placed behind the glove compartment. *Id.* at 15. He claimed it was Mr. Webb's idea to store it behind the glove compartment and he had previously told Mr. Webb not to put the gun there. *Id*.

Appellant was charged with possession of a firearm by a prohibited person, carrying a firearm without a license, and carrying a firearm in Philadelphia.[1] A trial was held on March 10, 2023. At trial, the parties stipulated to the results of DNA testing, which identified that the major component of the DNA mixture was consistent with Appellant's DNA profile

---

[1] 18 Pa.C.S.A. § 6106(a)(1), 18 Pa.C.S.A. § 6105(a)(1), and 18 Pa.C.S.A. § 6108, respectively.

and excluded Mr. Webb as a contributor to the DNA. N.T., 3/10/24, at 31-33. Officer Kristensen testified to the above facts for the Commonwealth, and Mr. Webb testified for the defense as follows.

Mr. Webb claimed to have found the gun in a field in an unspecified location, N.T., 3/10/24, at 46, and to have hidden it in Appellant's girlfriend's car—which Appellant was driving—without his knowledge. N.T., 3/10/24, at 42. Mr. Webb acknowledged that he had seen Appellant handle the firearm while they were shooting a music video prior to the arrest, but denied that Appellant had handled it on the day of the arrest. N.T., 3/10/24, at 43-45. He stated that the others were unaware that he had the gun on him that day. N.T., 3/10/24, at 49.

On March 15, 2023, the trial court found Appellant guilty of all three counts against him. N.T., 3/15/23, at 4. On September 11, 2023, the trial court sentenced Appellant to seventeen to thirty-four months of incarceration, followed by two years of reporting probation. N.T., 9/11/23, at 14. Appellant filed a motion for reconsideration on September 18, 2023. The trial court denied Appellant's motion on September 26, 2023. On October 19, 2023, Appellant timely filed a notice of appeal. On October 23, 2023, the trial court issued an order pursuant to Pa.R.A.P. 1925(b) ordering Appellant to file a statement. After being granted an extension of time, Appellant filed his concise statement on November 17, 2023. The trial court filed its Rule 1925(a) opinion on December 21, 2023. This appeal follows.

Appellant raises two questions for our review:

Is the evidence sufficient as a matter of law to sustain defendant/appellant's conviction for violations of the uniform firearms act where the competent evidence of record did not establish beyond a reasonable doubt that defendant constructively possessed the handgun recovered in a hidden compartment in a vehicle in which defendant was driving but did not own?

Is the verdict of guilty with respect to all charges against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice in light of the evidence presented at trial?

Appellant's Br. at 7.

Appellant's first issue challenges the sufficiency of the evidence. Our standard of review in assessing a challenge to the sufficiency of the evidence is well-settled. "The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). "Any doubts concerning an appellant's guilt [are] to be resolved by the trier of fact unless the evidence was so weak and inconclusive that no probability of fact could be drawn therefrom." *Commonwealth v. West*, 937 A.2d 516, 523 (Pa. Super. 2007). Further, "the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Perez*, 931 A.2d 703, 707 (Pa. Super. 2007).

Where a defendant was not in physical possession of a firearm, the Commonwealth may meet its burden, pursuant to both § 6105 and § 6106, by establishing that the defendant had constructive possession of the item. *See Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018) ("Illegal possession of a firearm may be established by constructive possession."). Constructive possession is found where the defendant had "conscious dominion" over the firearm. *Commonwealth v. Heidler*, 741 A.2d 213, 215-16 (Pa. Super 1999). To prove conscious dominion, "the Commonwealth must present evidence to show that the defendant had both the power to control the firearm and the intent to exercise such control." *Id.* at 216 (cleaned up). Constructive possession may be proven by circumstantial evidence and the "requisite knowledge and intent may be inferred from examination of the totality of the circumstances." *Commonwealth v. Smith*, 146 A.3d 257, 263 (Pa. Super. 2016) (cleaned up).

Appellant contends that the evidence presented at trial was insufficient to support his conviction for illegally possessing a firearm because the Commonwealth did not prove beyond a reasonable doubt that he had constructive possession of the handgun. Specifically, Appellant contends that since the handgun was found hidden behind the glove box, there was insufficient evidence to establish that he knew of the presence of the gun and that he intended to exercise control over it. Appellant's Br. at 21.

Here, it is undisputed that the firearm was not found on Appellant's person but was instead recovered from the car he was driving. Thus, the Commonwealth needed to show that Appellant had both the power to control the firearm and the intent to exercise such control. The trial court stated its conclusions as follows:

> None of the arguments Appellant has made undermine this [c]ourt's conclusion. . . . [T]his [c]ourt gave no weight to Mr. Webb's testimony that he alone owned the firearm and that he hid it in Appellant's car without Appellant's knowledge. The fact that Mr. Webb pleaded guilty to possession of the firearm also does not preclude this [c]ourt from finding Appellant guilty. First, every case must be heard on its own facts, and this [c]ourt was free to discredit Mr. Webb's testimony despite his guilty plea. In **Commonwealth v. Hopkins**, 67 A.33d 817 (Pa. Super. 2013), for example, the defendant and a juvenile were found in a car with contraband. Although the juvenile admitted to possession of some of the contraband in his own proceedings and testified at defendant's trial that all of it belonged to him, the jury found defendant guilty. The Superior Court affirmed, stating that "The jury . . . did not credit [the juvenile's] testimony[.] . . . The finder of fact is free to believe some, all, or none of the evidence presented." **Id.** at 821. Second, both Mr. Webb and Appellant could be guilty of possession of the same firearm. **Id.** at 820-21 ("It is possible for two people to have joint constructive possession of an item of contraband."); **Commonwealth v. Mudrick**, 507 A.2d 1212, 1214 (Pa. 1986) (two people can be guilty of constructively possessing contraband where they both have "joint control and equal access"); **Commonwealth v. Heidler**, 741 A.2d 213, 216-17 (Pa. Super. 1999). While this [c]ourt did not credit Mr. Webb's testimony that he alone knew the firearm was hidden in the car, that conclusion does not rule out the possibility that he and Appellant each had knowledge of and control of the firearm.
>
> Appellant also argues that his consent to the search of the car means that he could not have known that the firearm was there. This fact does not weigh in Appellant's favor; the person who hid the firearm behind the glove compartment presumably did so to prevent it from being found. Appellant may well have

consented because he did not anticipate that Officer Kristensen would notice that something was amiss with the glove compartment.

Tr. Ct. Op. at 9-10.

We agree. The evidence supporting the trial court's conclusion that Appellant possessed the requisite power and intent to control includes that Appellant was the driver of the car—and his girlfriend was the owner of the car—where the firearm was hidden. Appellant maintained that the gun did *not* belong to his girlfriend, so the fact-finder could reasonably infer that she did not conceal the gun behind her glovebox before giving Appellant permission to drive her car. Appellant had specific knowledge about the gun itself and admitted to having handled it in the past. Mr. Webb testified that Appellant used the gun prior to this incident while shooting a music video. Mr. Webb, who pleaded guilty to possession of that firearm, was unable to describe the gun or the color of the gun's clip, unlike Appellant who was able to physically describe the gun's size, color, shape, and type.

Additionally, the firearm's hiding place was within Appellant's reach, and the parties stipulated that most of the DNA on the firearm belonged to Appellant and that Mr. Webb was excluded as a DNA contributor. The fact-finder reasonably inferred that if Mr. Webb had hidden the gun without Appellant's assistance, Mr. Webb's DNA would have been on the weapon. Appellant's statement to the officer that he was "not going to find anything in the car" was reasonably interpreted by the fact-finder as Appellant's

confidence that an officer conducting a search would look only inside the glovebox and not behind it. Viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, the evidence was sufficient to show that Appellant had knowledge of the firearm and the power and intent to exercise control over the firearm.

Appellant's second issue is a challenge to the weight of the evidence. To begin, we recognize that,

> our standard of review for a weight-of-the-evidence claim is an abuse of discretion. As we have often reminded appellants, "An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v. Windslowe**, 2017 PA Super 82, 158 A.3d 698, 712 (Pa. Super. 2017). . . .
>
> "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Santos**, 2017 PA Super 387, 176 A.3d 877, 882 (Pa. Super. 2017). To mount an abuse-of-discretion attack against the trial court's determination that its guilty verdicts were not so against the weight of the evidence as to shock that court's own conscience, [an appellant must] . . . demonstrate how the trial court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality.

**Commonwealth v. Rogers**, 259 A.3d 539, 541 (Pa. Super. 2021), appeal denied, 280 A.3d 866 (Pa. 2022) (emphasis omitted). A weight-of-the-evidence claim "concedes that sufficient evidence exists to sustain the verdict

but questions which evidence is to be believed." ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa. Super. 2006).

Appellant argues that the verdict is against the weight of the evidence given the testimony of Mr. Webb. Mr. Webb was one of three other passengers in the vehicle where the firearm was found, he was seated directly in front of the glovebox, and he testified that the gun belonged to him and that he hid it without Appellant's knowledge. Appellant's Br. at 41. Mr. Webb pled guilty to possessing the same gun. *Id*. Appellant further submits that the trial court relied too heavily on the DNA evidence and other inculpatory evidence and did not ascribe as much weight to exculpatory evidence. *Id.* at 41-42.

The trial court, as fact-finder, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Commonwealth v. Fortson***, 165 A.3d 10, 14-15 (Pa. Super. 2017). The trial court's credibility findings as to Mr. Webb are as follows:

> This [c]ourt did not find Mr. Webb's testimony credible. Mr. Webb's account of how he came to be in possession of the firearm was implausible. He testified that he found the weapon in a field, *id.* at 46:20-23, but could not recall where the field was, the time of day or time of year he found the gun, or the weather during the event. *Id.* at 47:8-14. He did not know what kind of gun it was, the caliber of ammunition it used, or what color the clip was. He never purchased any ammunition for the gun. *Id.* at 48:2-9, 50:23-51:1. His account of how he got the firearm into its hiding place in Appellant's girlfriend's car was similarly implausible. He testified that he thought the gun was a prop when he found it initially and that he held that same assumption the day he was arrested. *Id.* at 48:7-15. He did not offer any explanation of why, if he believed the firearm was a prop, he believed he needed to

- 10 -

hide it. He did not testify that he was ever alone in the car and had no explanation of how he had managed to hide the firearm behind the glove compartment without Appellant seeing him do it. ***Id.*** at 48:16-50:5.

Mr. Webb's behavior during the police interview gave this Court further concern about his veracity. He answered the interviewer's questions slowly and quietly, until the officer asked him whether his DNA would be on the firearm. At that point, Mr. Webb sat in silence for several seconds; only when the officer asked the question again did he nod his head yes. Ex. C15 at 10:29-10:55. Finally, Mr. Webb's demeanor in court further called his account into question. He said that he and Appellant had known each other "For a bit" and that Appellant had given Mr. Webb a ride to court that day. ***Id.*** at 45:23-46:6. Mr. Webb seemed nervous and uncomfortable throughout his testimony. He looked frequently at Appellant, rather than the questioning attorneys or the judge. The Commonwealth's attorney pointed this out twice: "I am going to ask while we are speaking if you could look at me. You and I will talk, not you and anybody else in the courtroom ... again if you could look at me." ***Id.*** at 45:20-22, 46:7-8.

Tr. Ct. Op. at 5-6.

We find no abuse of discretion or error of law in the trial court's conclusions, and we may not reweigh the evidence or supplement the trial court's finding of credibility for our own. Appellant takes issue with the trial court's statement that no explanation was given as to how Mr. Webb would have hidden the gun without Appellant's knowledge, suggesting that the trial court placed a burden of proof on the defense. Appellant's Br. at 38. However, as discussed above, the evidence was sufficient for the trial court as fact-finder to infer that Appellant *did* know the firearm was hidden in his girlfriend's vehicle. The absence of an explanation from Mr. Webb, who claimed to have

placed the firearm behind the glovebox without Appellant's knowledge, supports the trial court's incredulity in Mr. Webb's testimony.

The trial court did not find Mr. Webb credible because he claimed to have found the gun in a field, but could not specify the location, day, time of year, or weather at the time he found it. He also was unable to describe it, when Appellant was able to describe the gun as "skinny," and said it was either a "40, 42, 43, or a 9," and a "glock." He also described the magazine and top as "normal" but said the barrel was distinctive and looked like a polymer. Contrarily, Mr. Webb did not know what kind of gun it was, the caliber of ammunition it used, or what color the clip was. Mr. Webb also testified that he thought the gun was simply a prop at the time he hid it, but he concealed it anyway. The trial court was free to disbelieve any part or all of Mr. Webb's testimony, and the trial court offered sound explanations for its credibility determinations.

Appellant's argument that the trial court weighed too heavily the facts against him fails to demonstrate how the trial court's ruling overrode the law, was manifestly unreasonable, or was the product of bias, prejudice, ill-will or partiality. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/9/2024