J-S21040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK THOMAS WARD BOISEY | : | No. 905 MDA 2021 |

Appeal from the Order Entered July 9, 2021
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0003408-2019

BEFORE:  DUBOW, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                     **FILED JULY 28, 2022**

The Commonwealth of Pennsylvania appeals[1] from the July 9, 2021

order of the Court of Common Pleas of Cumberland County (trial court)

excluding testimony of four police officers from the trial of Mark Thomas Ward

Boisey (Boisey) as a sanction for a discovery violation.  We reverse the order

and remand for further proceedings.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** Pa.R.A.P. 311(d) ("[I]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").

**I.**

The trial court summarized the facts and procedural history of this case

as follows:

> [Boisey] was arrested on November 13, 2019. According to the allegations, [he] was involved in a violent domestic dispute which ended in a standoff with the police. Multiple shots were fired at the responding officers during the standoff. The defendant was charged with numerous offenses including criminal attempt to [commit] homicide. He has remained incarcerated since his arrest.
>
> There were 3 continuances granted at the request of the Public Defender. [Boisey] obtained private counsel in November of 2020. Private [c]ounsel received discovery from the Public Defender which consisted of "numerous DVDs filled with thousands of images, videos, and reports." At the request of the defendant, the matter was continued to January 2021. It was continued yet again to the March term, and then to the May term.
>
> On April 8, 2021, [Boisey] filed yet another request for a continuance on the basis that he just received the results of a gunshot residue test. While [his] hands were swabbed on the night of his arrest, the Commonwealth had not even submitted the sample for testing until March 22, 2021. We denied the request for a continuance but precluded the Commonwealth from presenting any evidence regarding the gunshot residue test. The Commonwealth did not object.
>
> The case was called for trial as scheduled on May 17, 2021. Before jury selection began, defense counsel brought to our attention that it had just received reports from the Cumberland County Strategic Emergency Response Team (SERT). There had been multiple requests for all police reports from both the [p]ublic [d]efender and [p]rivate [c]ounsel during the many months this case had been pending. The Commonwealth had led the defense to believe that all police reports had been provided. We indicated that we would preclude the SERT team members from testifying to anything in their report. However, [d]efense [c]ounsel was adamant that he wanted a continuance to reconsider the defense strategy and to discuss the reports with the defendant. We granted the continuance to the July term of court.

In light of the continuance, the Commonwealth asked us to reconsider our rulings excluding testimony regarding matters contained in the SERT reports as well as the gunshot residue test. Since the defense now had more than two months before the trial was scheduled, we reversed both rulings, indicating that all such evidence could be presented.

The trial was scheduled to begin on July 12, 2021. In June, [Boisey's] counsel requested to withdraw his appearance so that new defense counsel could take over. We indicated that we would not allow the substitution if it would result in another delay. New defense counsel agreed that he would commit the time and resources necessary to try the case on time, which he did.

Yet again, on the eve of trial, the Commonwealth provided additional police reports. They consisted of reports which had been prepared shortly after the incident by the Lower Allen Township Police officers referred to above. The Commonwealth agreed that there was no excuse for the late discovery. [Boisey] moved to exclude the testimony of those officers. The Commonwealth indicated that it had no objection except as to [O]fficer Rennie. It argued that since he had testified at the preliminary hearing, he should be allowed to testify at trial.

Defense [c]ounsel placed on the record, in [c]hambers and under seal, the ways in which the information contained in those reports would prejudice his client. After hearing the reasons, we were satisfied that it would require the defense to completely revise its strategy just days before trial. Since there was no excuse for the Commonwealth's failure to have provided those reports, we excluded the testimony.

Trial Court Opinion, 2/3/22, at 1-4 (citations omitted).

The Commonwealth filed a motion to reconsider the order only as to the testimony of Officer Rennie. Because he had testified at the preliminary hearing, the Commonwealth argued that there was no unfair surprise as to the contents of his report. At argument on the motion to reconsider, the Commonwealth expanded its request and argued that all four officers should

be permitted to testify at trial. It contended that it had not violated the rules of discovery and, even if it had, a continuance attributed to the Commonwealth would cure any prejudice. The trial court denied the motion and the Commonwealth appealed. The trial court did not order it to file a concise statement of issues complained of on appeal but filed an opinion in support of its order pursuant to Pa. R.A.P. 1925(a).

## II.

The Commonwealth raises two issues on appeal: whether the trial court abused its discretion by precluding the officers' testimony as a sanction for a purported discovery violation, and whether the trial court erred in determining that the reports constitute **Brady**[2] material.[3]

## A.

Pretrial discovery is governed by the Rules of Criminal Procedure, which provide that before the parties engage in motions practice related to discovery, they must "make a good faith effort to resolve all questions of

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

[3] "Decisions involving discovery matters are within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." **Commonwealth v. Santos**, 176 A.3d 877, 882 (Pa. Super. 2017) (citation and quotation marks omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Id.** (citation and quotation marks omitted).

discovery, and to provide information required or requested under these rules as to which there is no dispute." Pa.R.Crim.P. 573(A). Rule 573 further provides for discretionary discovery, on motion of the defendant, of "any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice." Pa.R.Crim.P. 573(B)(2)(iv).[4] The defendant must show that the evidence is material and that the request is reasonable. Pa.R.Crim.P. 573(B)(2). Additionally,

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).

Rule 573 imposes greater discovery obligations on the Commonwealth than **Brady**, as it requires disclosure of more than just exculpatory and material evidence. **Commonwealth v. Maldonado**, 173 A.3d 769 (Pa. Super. 2017). However, "[t]he Commonwealth does not violate Rule 573 when it fails to disclose to the defense evidence that it does not possess and

---

[4] The Rule also provides for items of mandatory discovery. Pa.R.Crim.P. 573(B)(1). Neither the parties nor the trial court have claimed that the police reports fall under any of these categories.

of which it is unaware." ***Commonwealth v. Collins***, 957 A.2d 237, 253 (Pa. 2008).

In contrast, there are three elements to establish a ***Brady*** violation: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued." ***Commonwealth v. Bagnall***, 235 A.3d 1075, 1084 n.10 (Pa. 2020) (citations omitted). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***Commonwealth v. Lambert***, 884 A.2d 848, 854 (Pa. 2005) (citations omitted). The relevant question for the materiality analysis is "whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ***Id.*** (citations omitted). If the evidence at issue implicates ***Brady***, "the Commonwealth is charged with its possession even while it is exclusively in the custody of police." ***Collins***, ***supra***, at 253.

**B.**

We first turn to whether the Commonwealth violated Rule 573 by failing to disclose police reports authored by the Lower Allen Township police when it did not have the reports in its possession. It is undisputed that the discovery process in this case proceeded informally. Boisey was represented by various

counsel throughout the pendency of the case but did not file a motion for discovery. The certified record does not include any details regarding the substance of his informal discovery request.[5] Moreover, the record is clear that the Commonwealth did not receive the Lower Allen Township police reports until a few days before trial, after the trial court had already made clear that it would not grant any further continuances, and it disclosed the reports to Boisey immediately upon receiving them.

Under these circumstances, the trial court committed an error of law in determining that the Commonwealth had violated its discovery obligations

---

[5] In its opinion, the trial court stated "[t]here had been multiple requests for all police reports from both the [p]ublic [d]efender and [p]rivate [c]ounsel during the many months this case had been pending." Trial Court Opinion, 2/3/22, at 2. This factual finding is unsupported by the record. At the hearing on Boisey's motion to preclude the officers from testifying, defense counsel explained that the public defender's office had originally received voluminous discovery in the case. It provided discovery and a cover letter describing the contents to Boisey's first retained private counsel on October 26, 2020. That attorney provided the same information to current defense counsel. Counsel explained that he asked the Commonwealth for the Lower Allen Township Police Department reports in an email the week of the hearing and at their meeting the night prior, and the Commonwealth did not have copies of the reports at that time. The Commonwealth provided the reports to defense counsel on the day of the hearing after receiving them for the first time. When the trial court asked the prosecutor whether there had been prior requests for police reports, she responded, "I would imagine so. I don't remember specifically." Notes of Testimony, 7/9/21, at 3; *see also id.* at 2 ("I believe that there were informal requests for reports. However, there was never any specific request for the Lower Allen reports; otherwise, we would have done exactly what happened in this case, where we immediately reached out to Lower Allen, procured them and turned them over."). There is no other evidence of record regarding any other requests for discovery made by any counsel during the pendency of the case.

under Rule 573. While the trial court's frustration with the multiple continuances in this case is understandable, Rule 573(E) authorizes sanctions such as the exclusion of evidence only when "a party has failed to comply with" the rule. Pa.R.Crim.P. 573(E); *Maldonado*, *supra*, at 774. Rule 573 explicitly provides that the Commonwealth's obligation to disclose items of discretionary discovery attaches on motion of the defendant, which did not occur here. *Compare* Pa.R.Crim.P. 573(B)(2) (stating court may order discretionary discovery "if the defendant files a motion for pretrial discovery") *with* Pa.R.Crim.P. 573(B)(1) (providing for mandatory discovery "on *request* by the defendant" (emphasis added)).

Further, it is undisputed that the Commonwealth did not possess the police reports at issue until July 2021 and it immediately disclosed them to Boisey upon receipt. Because the Commonwealth was unaware of the reports and did not have them in its possession, it had no duty under the Rule to disclose them at any time prior. *Collins*, *supra*; *see also Commonwealth v. Long*, 753 A.2d 272, 278 (Pa. Super. 2000) (finding no rule violation when the prosecution disclosed videotape to defense immediately upon becoming aware of it shortly before trial). Thus, the trial court erred in precluding the officers' testimony when the Commonwealth had not violated the Rule.[6]

_____

[6] Boisey focuses his argument on whether the trial court's chosen sanction of precluding the officers' testimony was an abuse of discretion. *See* Boisey's Brief at 8-11 (citing *Commonwealth v. Burke*, 781 A.2d 1136 (Pa. 2001; *(Footnote Continued Next Page)*

## C.

Next, the Commonwealth argues that the trial court improperly excluded the officers' testimony pursuant to *Brady* when the police reports at issue were not exculpatory or impeaching and no prejudice ensued. However, the trial court does not appear to have relied on *Brady* as a basis for exclusion of the police reports. The order precluding the evidence does not reference *Brady*, and the single mention of *Brady* at the hearing was the trial court's acknowledgement that Boisey could potentially raise such a claim post-trial. *See* Notes of Testimony, 7/8/21, at 4 ("I will grant whatever you want excluded from that. If it contains *Brady* information that would lead to the dismissal of the charges if he's convicted, you can make that in a post-sentence motion, and the Commonwealth will have to live with whatever those consequences are."). The trial court's opinion only cites to Rule 573 and does not contain any reasoning or cite any law related to *Brady*. Trial Court Opinion, 2/3/22, at 4-7. Accordingly, this issue is not before us and we do not address it further.[7]

---

*Commonwealth v. Smith*, 955 A.2d 391 (Pa. Super. 2008); *Commonwealth v. Galloway*, 771 A.2d 65 (Pa. Super. 2001)). Because the Commonwealth did not violate Rule 573, we do not reach the question of whether preclusion of the evidence was an appropriate remedy.

[7] As the trial court implicitly acknowledged at the hearing, *Brady* would provide Boisey with a potential claim for post-trial relief if the suppression of exculpatory or impeachment evidence had an impact on the trial proceedings. *Lambert*, *supra* (defining the materiality element of a successful *Brady* claim
*(Footnote Continued Next Page)*

Order reversed and case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/28/2022

---

as requiring a reasonable probability that the outcome of the proceeding would have been different). At this juncture in the proceedings, when Boisey has not yet proceeded to trial, any litigation of a *Brady* claim would be premature because the materiality of the evidence cannot be assessed.