J-S27022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENNIFER LYNN MORRISSEY | : | |
| | : | |
| Appellant | : | No. 1830 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 1, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0007677-2017

BEFORE: LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED JANUARY 8, 2025**

Appellant Jennifer Lynn Morrissey appeals from the judgment of sentence following her convictions for first-degree murder and related offenses. On appeal, Appellant raises several challenges to evidentiary rulings made by the trial court. We affirm.

The trial court set forth the following factual and procedural history:

On August 8, 2017, pursuant to a 9-1-1 phone call, members of the Upper Makefield Police Department responded to 1050 River Road in Washington Crossing, Pennsylvania. Upon arrival, officers discovered a male occupant of the residence unresponsive with a single gunshot wound to the head. The victim, identified as Michael McNew [(the victim)], was determined to be deceased. No weapon was found in the vicinity of the body. A shell casing was found to the right of the chair in which [the victim] was sitting. The scene was otherwise undisturbed, and there was no sign of a struggle.

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant, a live-in girlfriend of the victim, was developed as a suspect. Her cell phone was seized and searched pursuant to a warrant. The phone contained user deleted chat files created on August 6, 2017, immediately prior to the estimated time of [the victim's] death. These files were part of an ongoing argument between Appellant and [the victim] regarding her relationship status with another man. As part of this argument, Appellant threatened to come to [the victim's] house and kill him. Appellant's cell phone revealed it had auto-connected to the wireless router at [the victim's] home at 9:37 p.m. on August 6, 2017, establishing the phone was within 150 feet of the router at the time of the connection. The time of connection was within the estimated parameters of the time of [the victim's] death. Experts using cell tower technology were able to trace the location of Appellant's cell phone during several critical periods of time.

In an interview with police, Appellant insisted she had not resided with [the victim] for several months and knew nothing about his death. However, Appellant testified at trial that she killed [the victim] by accident when the gun unintentionally went off. She ran from the house, then returned a few hours later to make the crime scene look like a robbery. The next day she sent texts and Facebook messages to the victim despite knowing he was dead. Appellant never called the police. Throughout her testimony, Appellant shifted her testimony between an accidental shooting and a shooting in self-defense.

Appellant was arrested and charged with criminal homicide and related offenses on August 25, 2017. A preliminary hearing was held on November 6, 2017 and all charges were held for court. Arraignment in the [trial court] was on December 8, 2017. Pre-trial motions were filed by both sides and hearings were held on said motions on August 16 and November 19, 2018. Orders deciding all pre-trial motions were filed on January 10 and 16, 2019. A jury trial was conducted over the course of eight days from January 22 until February 1, 2019. At this trial, twenty-three (23) witnesses (including Appellant) testified and eighty-six (86) exhibits were entered into evidence. After more than ten (10) hours of deliberation, the jury found Appellant guilty of first-degree murder, tampering with physical evidence, and possessing

an instrument of crime.[1]  The jury found Appellant not guilty of burglary and criminal trespass.

On March 1, 2019, Appellant was sentenced to serve a term of incarceration in a state correctional institution of life without parole for the charge of [first-degree] murder.  No further penalty was imposed on the remaining charges.  On March 29, 2019, Appellant timely filed a notice of appeal to the Superior Court. . . .

On March 17, 2021, the Pennsylvania Superior Court affirmed the judgment of sentence.  [***See Commonwealth v. Morrissey***, 962 EDA 2019, 2021 WL 1035086 (Pa. Super. filed Mar. 17, 2021) (unpublished mem.).]

On May 21, 2021, Appellant filed a *pro se* [Post Conviction Relief Act (PCRA)[2]] petition making numerous claims of ineffective assistance of trial and appellate counsel.  An amended PCRA petition was filed by PCRA counsel Patrick J. McMenamin, Jr., Esquire, on December 13, 2021.  On February 7, 2022, the Commonwealth's answer was filed.

On August 17, 2022, a PCRA hearing was held.  On June 23, 2023, [the PCRA] court reinstated Appellant's direct appeal rights *nunc pro tunc*.

Trial Ct. Op., 11/13/23, at 1-3 (citations omitted and formatting altered).

Appellant subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court issued an opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for our review:

1. Did the trial court err in ruling that Candy Sosinski would not be permitted to testify at trial on Appellant's behalf?

2. Did the trial court err in ruling that [Protection From Abuse (PFA)] records, allegations, and the testimony of Maryann McNew were inadmissible at the time of trial?

---

[1] 18 Pa.C.S. §§ 2502(a), 4910(1), and 907(a), respectively.

[2] 42 Pa.C.S. §§ 9541-9546.

3. Did the trial court err in ruling that certain text messages and/or phone calls were properly authenticated and admissible at the time of trial?

4. Did the trial court err in ruling that physical evidence seized pursuant to various search warrants was admissible at trial?

5. Did the trial court err in its limitation of defense counsel's cross-examination of Charles Kulow by sustaining numerous objections by the Commonwealth?

Appellant's Brief at vi (formatting altered).[3]

In all four of her issues, Appellant challenges evidentiary rulings made by the trial court. We review a trial court's evidentiary rulings for an abuse of discretion. **Commonwealth v. Luster**, 234 A.3d 836, 838 (Pa. Super. 2020). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record." **Commonwealth v. Santos**, 176 A.3d 877, 882 (Pa. Super. 2017) (citation omitted). "[W]hen reviewing the trial court's exercise of discretion, it is improper for an appellate court to step[] into the shoes of the trial judge and review the evidence *de novo*." **Commonwealth v. Gill**, 206 A.3d 459, 467 (Pa. 2009).

**Candy Sosinski's Testimony**

In her first issue, Appellant contends that the trial court erred when it did not permit Candy Sosinski to testify on Appellant's behalf at trial. Appellant's Brief at 12. In her brief, Appellant proffers that Ms. Sosinski would

_____

[3] Appellant has withdrawn her fifth issue. **See** Appellant's Brief at vi, 26.

- 4 -

have testified that she was at [the victim's] residence, at which time she asked the victim for a ride home. *Id.* at 13. Ms. Sosinski would have further testified that during the ride, the victim "became aggressive, she felt uncomfortable, and decided to walk home when they stopped at a Wawa convenience store." *Id.* at 13-14. Appellant specifically argues that Ms. Sosinski's testimony would "establish [the victim's] aggressive character by presenting a single event which displayed the relevant character trait." *Id.* at 15.

The Pennsylvania Rules of Evidence permit a defendant, in certain circumstances, to offer evidence of an alleged victim's pertinent trait. Pa.R.E. 404(a)(2)(B). A defendant may only offer character evidence of the victim in instances where a defendant claims self-defense. *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1256 (Pa. Super. 2014) (*en banc*). A defendant may offer evidence of specific incidents or of the victim's criminal history. *Id.* This Court has held that: "Specific instances of a victim's prior conduct are admissible to show a victim's character trait only if the trait in question is probative of an element of a crime or a defense." *Commonwealth v. Minich*, 4 A.3d 1063, 1071 (Pa. Super. 2010) (citation omitted). Therefore, under Rule 404, evidence of the victim's "pertinent trait" is limited in scope and must be relevant to the offense." *Commonwealth v. Weeden*, 253 A.3d 329, 338 (Pa. Super. 2021).

In the instant case, the trial court reached the following conclusion:

> [E]ven if it could be argued that testimony of [the victim's] trait for "aggressiveness" is admissible, the proposed testimony by Ms. Sosinski and the Commonwealth's response to that proffer

demonstrated that Ms. Sosinski's testimony did not support that trait. Again, the Commonwealth explained that the witness stated that she only felt "pressured" by the victim to stay the night. The victim is deceased, so he is not present to testify whether or why he may have "pressured" Ms. Sosinski to stay at his residence. This was speculative testimony and not a specific act of "aggression." Defense counsel did not dispute the Commonwealth's interpretation of Ms. Sosinski's testimony. Thus, the bulk of Ms. Sosinski's testimony was irrelevant and prejudicial--the victim bought drugs for Appellant and made "romantic overtures" to Ms. Sosinski while Appellant was nodded off on heroin.

There was no evidence proffered that Ms. Sosinski ever saw the victim being "aggressive" toward Appellant. Appellant herself testified that she did not believe that the victim would shoot her. Appellant testified, "I just don't see the victim to be a violent person," and she did not take the victim's threats seriously. N.T. Trial, 1/31/19, at 52, 56. Therefore, Ms. Sosinski's testimony that the victim was "aggressive" lacked any foundation to be admitted on a theory of self-defense.

Trial Ct. Op., 11/13/23, at 9-10 (some formatting altered and footnote omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Luster*, 234 A.3d at 838. The record reflects that Ms. Sosinski's testimony did not relate to aggressiveness on the part of the victim. *See Weeden*, 253 A.3d at 338. Therefore, Appellant is not entitled to relief.

### PFA Records and Maryann McNew's Testimony

In her second issue, Appellant alleges that the trial court erred when it determined that PFA records, allegations, and potential testimony from the victim's ex-wife, Maryann McNew, were inadmissible at trial. Appellant's Brief at 15. Appellant argues that by precluding Mrs. McNew's testimony, the trial

court "sanitized" the victim, thereby leading the jury "to believe [the victim was someone he was not." ***Id.*** at 18.

Preliminarily, we note that the law of the case doctrine "bars a judge from revisiting rulings previously decided by another judge of the same court, absent exceptional circumstances." ***Commonwealth v. Lancit***, 139 A.3d 204, 206 (Pa. Super. 2016). Under the umbrella of the law of the case doctrine, the coordinate jurisdiction rule provides that "judges of coordinate jurisdiction should not overrule each other's decisions." ***Commonwealth v. King***, 999 A.2d 598, 600 (Pa. Super. 2010). Our Supreme Court has stated that the coordinate jurisdiction rule applies to both trial courts and appellate courts hearing a second appeal in a case. ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995). "Departure from either the coordinate jurisdiction rule or the law of the case doctrine is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." ***Commonwealth v. Hernandez***, 39 A.3d 406, 412 (Pa. Super. 2012) (citations omitted).

In the instant case, a previous panel of this Court directly addressed this issue during Appellant's first direct appeal:

> In any event, by way of background, Appellant opposed the Commonwealth's pretrial motion to exclude a 2005 [PFA] petition filed by [Mrs. McNew] against [the victim]. Appellant wished to have the PFA admitted into evidence but the trial court granted the Commonwealth's motion because Appellant was unaware of

the PFA and therefore she could not use it bolster any theory of self-defense. . . . Accordingly, we affirm on the basis of the trial court's opinion.[4]

***Morrissey***, 2021 WL 1035086 at *3.[5]

Appellant has not alleged that any exceptions to the coordinate jurisdiction rule or the law of the case doctrine apply to the instant case. ***See Hernandez***, 39 A.3d at 412. Accordingly, we are bound by this Court's prior decision from Appellant's first direct appeal, and we may not depart from the findings reached by the previous panel. ***See Starr***, 664 A.2d at 1331; ***King***, 999 A.2d at 600. Therefore, Appellant is not entitled to relief.

**Authentication and Admissibility of Text Messages and Phone Calls**

In her next issue, Appellant contends that the trial court erred when it ruled that certain text messages and phone calls were properly authenticated

_____

[4] The trial court concluded as follows:

> . . . [T]he Commonwealth requested a pre-trial ruling that allegations contained in a petition filed pursuant to the [PFA] Act against the victim be excluded from trial in this case. [The trial court] determined: (1) the allegations were more than ten (10) years old; (2) the allegations were not part of a criminal investigation; (3) there was not a conviction resulting from the allegations; (4) there was not a hearing regarding the allegations; (5) [Appellant] was not aware of the allegations. Accordingly, applying established case law, ***Commonwealth v. Ignatavich***, 482 A.2d 1044 (Pa. Super. 1984), [the trial court] granted the Commonwealth's motion.

Trial Ct. Op., 12/27/19, at 7-8 (some formatting altered).

[5] Although Appellant's direct appeal rights were reinstated nunc pro tunc, the prior decision of this Court reaching the merits of this issue was not vacated and remains the law of the case.

and were admissible at trial. Appellant's Brief at 19. Specifically, Appellant contends that "the Commonwealth presented no evidence during the pre-trial motions to link [Appellant] to the electronic communications[.]" *Id.* at 22.

"It is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." *Commonwealth v. Westlake*, 295 A.3d 1281, 1286 n.8 (Pa. Super. 2023) (citations omitted and some formatting altered). "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim. Further, this Court will not become counsel for an appellant and develop arguments on an appellant's behalf." *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (citations omitted.) An appellant's failure to adequately develop an argument results in waiver of the claim. *Commonwealth v. Romeo*, 153 A.3d 1084, 1090-91 (Pa. Super. 2017); *see also* Pa.R.A.P. 2119(c).

As noted above, Appellant, in her point heading, alleges that the trial court "erred in ruling that certain text messages and/or phone calls were properly authenticated and admissible at the time of trial." Appellant's Brief at 19. Appellant now presents the following argument concerning the evidence at issue:

> In the present case the [Commonwealth] offered no evidence that linked [Appellant] to the social media, text messages, or other electronic communications. The [Commonwealth] argued it had evidence, listed a plethora of alleged links between [Appellant] and the electronic communications, but it presented no testimony

whatsoever during the pre-trial motions. The Commonwealth admitted into evidence downloads purportedly from [Appellant's] cell phone, and other documents generated from her cell phone, arguing those communications authenticated other electronic communications, however, there were no witnesses who testified that the communications could be linked to [Appellant]. Other than arguing that the communication came from her phone, the electronic communications were not authenticated.

*Id.* at 20.

Our review of the record reveals that the contested evidence includes text messages, Facebook messages, web searches, a history of web searches, and intercepted phone calls made by Appellant. N.T. Hr'g, 11/19/18, at 7-8. Appellant's brief consists of bald generalized statements that appear to implicate over a dozen Commonwealth exhibits in the record that were admitted by the trial court during the pre-trial hearing. *See id.* at 19 (admitting Commonwealth Exhibits 13-26). Appellant's lack of specificity in her argument necessitates waiver of this issue. *See Romeo*, 153 A.3d at 1090; Pa.R.A.P. 2119(c). Appellant has not specified which exhibits were admitted into evidence in error at trial, and this Court will not act as counsel, nor will it comb through the record to develop an argument on Appellant's behalf. *See Samuel*, 102 A.3d at 1005. Accordingly, Appellant's issue is waived on appeal.

**Search Warrants**

In her final issue, Appellant contends that the trial court erred in concluding that physical evidence seized pursuant to search warrants secured by the police was admissible at trial. Appellant's Brief at 22. Specifically,

Appellant argues that the search warrants at issue were overbroad, and that any evidence seized as a result of the search warrants should have been suppressed by the trial court. *Id.* at 26.

The Commonwealth responds that because Appellant did not raise this claim before the trial court, it is waived on appeal. Commonwealth's Brief at 41.

It is axiomatic that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also* Pa.R.E. 103(a)(1) (stating that in order to challenge a ruling admitting evidence, a party must make a timely objection and state the specific ground for the objection). This Court has held that "appellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 903 A.2d 1269, 1272-73 (Pa. Super. 2006) (citing *Commonwealth v. Malloy*, 856 A.2d 767, 778 (Pa. 2004)).

In the instant case, the record reflects Appellant filed a suppression motion in which she argued that the search warrants secured by the police were not supported by probable cause. *See* Appellant's Motion in Opposition to Commonwealth's Omnibus Pre-Trial Motion and Appellant's Pre-Trial Motions, 7/19/23, at 17-19 (unpaginated); *see also* Appellant's Motion in Opposition to Commonwealth's Omnibus Pre-Trial Motion and Appellant's Supplemental Pre-Trial Motions, 11/30/18. However, Appellant did not claim that the search warrants were overbroad. Therefore, because Appellant raised

the instant overbreadth argument for the first time on appeal, this issue is waived. *See Little*, 903 A.2d at 1272-73; Pa.R.A.P. 903(a). For these reasons, we conclude that Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/08/2025